UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

|  |  |  |
|---|---|---|
| BASSEY B. NDEMENOH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | 20 Civ. 4492 (RA) |
| - against - | : | |
| | : | **ORIGINAL FILED BY ECF** |
| VINCENT BOUDREAU, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT**


LETITIA JAMES
Attorney General of the
   State of New York
<u>Attorney for Defendants</u>
28 Liberty Street
New York, New York 10005


Johane Severin
Assistant Attorney General
   *Of Counsel*


i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

PROCEDURAL HISTORY........................................................................................................ 4

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................... 7

    I.     MOST OF PLAINTIFF'S CLAIMS ARE TIME-BARRED AND HE FAILS TO
           DEMONSTRATE THAT THE DOCTRINE OF EQUITABLE TOLLING SHOULD
           APPLY ..................................................................................................................... 7

    II.    THE DEFENDANTS MAY NOT BE SUED UNDER SECTION 1983 IN THEIR
           OFFICIAL CAPACITIES ...................................................................................... 10

    III.   PLAINTIFF'S FAILURE TO ALLEGE PERSONAL INVOVLVEMENT DEFEATS
           HIS CLAIMS AGAINST BOUDREAU, THOMPSON AND THORNTON............ 11

    IV.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE THE ELEMENTS OF HIS
           CLAIMS AGAINST BAIDYA, RHINEHART AND LAPERUTA......................... 12

        A.  Plaintiff Fails to Adequately Allege the Elements of His False Arrest Claims .... 13

        1. Plaintiff Fails to Show Intent to Confine ................................................................. 13

        2. Plaintiff Fails to Show That His Confinements Lacked Privilege .......................... 15

        B.  Plaintiff Fails to Adequately Allege the Elements of His Malicious Prosecution
            Claims ...................................................................................................................... 16

        1. Plaintiff Fails to Show Initiation of Criminal Proceedings..................................... 16

        2. There was Probable Cause for Plaintiff's Prosecutions ........................................... 18

        3. Plaintiff Fails to Allege Actual Malice ................................................................... 19

    V.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .......................... 19

CONCLUSION............................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. al-Kidd,*
    563 U.S. 531 (2011)................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................6, 11, 13, 17

*Atkinson v. Okocha,*
    2021 WL 40258 (E.D.N.Y. Jan. 5, 2021) ...............................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................6, 7, 13, 17

*Bernard v. United States,*
    25 F.3d 98 (2d Cir. 1994)........................................................15

*Boyd v. City of New York,*
    336 F. 3d 72 (2d Cir. 2003).....................................................18

*Broughton v. State of New York,*
    37 N.Y.2d 451 (1975) .............................................................13

*Castro v. City of Nassau,*
    739 F. Supp. 2d 153. (E.D.N.Y. 2010) ..............................19, 21

*Corsini v. Bloomberg,*
    26 F. Supp. 3d 230 (S.D.N.Y. 2014).......................................16

*Dawkins v. Gonyea,*
    646 F. Supp. 2d 594 (S.D.N.Y. 2009)......................................7

*Dube v. State University of New York,*
    900 F.2d 587 (2nd Cir. 1990)..................................................11

*Garlasco v. Stuart,*
    602 F. Supp. 2d 396 (D. Conn. 2009)......................................15

*Gonzalez v. Sarreck,*
    2011 WL 5051341 (S.D.N.Y. Oct. 24, 2011) .........................12

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)................................................................20

*Harris v. Mills,*
    572 F.3d 66 (2d Cir. 2009).......................................................6

*J.T. v. de Blasio*,
  2020 WL 6748484 (S.D.N.Y. Nov. 13, 2020) ........................................................................9

*Jocks v. Tavernier*,
  316 F. 3d 128 (2d Cir. 2003)...............................................................................................15

*Johnson v. Barney*,
  360 Fed. App'x. 199 (2d Cir. 2010).....................................................................................11

*Johnson v. City of New York*,
  2010 WL 2292209 (S.D.N.Y. June 7, 2010) ........................................................................18

*King v. Crossland Savings Bank*,
  111 F.3d 251 (2d Cir. 1997).................................................................................................13

*Lloyd v. City of New York*,
  43 F. Supp. 3d 254 (S.D.N.Y. 2014).....................................................................................12

*Lopez v. City of New York*,
  901 F. Supp. 684 (S.D.N.Y. 1995) .......................................................................................14

*Lowth v. Town of Cheektowga*,
  82 F.3d 563 (2d Cir. 1996)...................................................................................................18

*Malley v. Briggs*,
  475 U.S. 335 (1986).............................................................................................................20

*Mamot v. Bd. of Regents*,
  367 Fed. Appx. 191 (2d Cir. 2010) ......................................................................................11

*Manganiello v. City of New York*,
  612 F.3d 149 (2d Cir. 2010).............................................................................................17, 18

*Martinez v. Simonetti*,
  202 F.3d 625 (2d Cir. 2000).................................................................................................16

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004).................................................................................................20

*Miloslavsky v. AES Engineering Society*,
  808 F. Supp. 351 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)..............................18

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985).............................................................................................................20

*Murphy v. Lynn*,
  53 F.3d 547 (2d Cir. 1995).....................................................................................................7

*Naumovski v. Norris,*
    934 F. 3d 200 (2d Cir. 2019)...............................................................................20

*Nieves v. County of Monroe,*
    761 F. Supp. 2d 48 (W.D.N.Y. 2011) ................................................................17

*Obilo v. City University of the City of New York,*
    2003 WL 1809471 (E.D.N.Y. 2003)..................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)..............................................................................................11

*Quern v. Jordan,*
    440 U.S. 332 (1979)............................................................................................11

*Randolph v. CIBC World Markets,*
    219 F. Supp. 2d 399 (S.D.N.Y. 2002).................................................................9

*Ricciuti v. N.Y.C. Transit Authority,*
    124 F.3d 123 (2d Cir. 1997)...............................................................................17

*Rosenwasser v. Fordham University,*
    772 Fed. App'x. 1 (2d Cir. 2019)........................................................................10

*Rounseville v. Zahl,*
    13 F.3d 625 (2d Cir. 1994).................................................................................19

*Sealey v. Giltner,*
    116 F.3d 47 (2d Cir. 1997).................................................................................12

*Singer v. Fulton County Sheriff,*
    63 F.3d 110 (2d Cir. 1995)...........................................................13, 15, 16, 18

*Smith v. McGinnis,*
    208 F.3d 13 (2d Cir. 2000)...................................................................................8

*TADCO Const. Corp. v. Dormitory Authority of State of New York,*
    700 F. Supp. 2d 253 (E.D.N.Y. 2010) ...............................................................13

*Tangreti v. Bachman,*
    983 F.3d 609 (2d Cir. 2020)...............................................................................11

*Trombley v. O'Neill,*
    929 F. Supp. 2d 81 (S.D.N.Y. 2013)..................................................................15

*Trotman v. Palisades Interstate Park Comm'n,*
    557 F.2d 35 (2d Cir. 1977).................................................................................11

*United States v. Barnes*,
    2020 WL 4550389 (N.D. Okla. Aug. 6, 2020) ........................................................9

*United States v. Preston*,
    2019 WL 5150949 (E.D. La. Apr. 8, 2019) ...........................................................10

*United States v. Thomas*,
    2020 WL 7229705 (E.D. La. Dec. 8, 2020) ..........................................................10

*Vega v. Miller*,
    273 F.3d 460 (2d Cir. 2001) ..................................................................................20

*Veltri v. Building Service 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004) ....................................................................................8

*Wallace v. Kato*,
    549 U.S. 384 (2007) ................................................................................................7

*Weyant v. Okst*,
    101 F.3d 845 (2d Cir. 1996) ..................................................................................15

*Will v. Michigan Department of State Police*,
    491 U.S. 58 (1989) ................................................................................................10

*Williams v. City of New York*,
    916 F. Supp. 2d 235 (E.D.N.Y. 2012) ..................................................................16

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) .............................................................13, 18

*Zerilli-Edelglass v. New York City Transit Authority*,
    333 F.3d 74 (2d Cir. 2003) ......................................................................................8

**CONSTITUTIONAL PROVISIONS**

U. S. Const. amend.
    IV ...................................................................................................................2, 13, 15
    XI ..........................................................................................................................5, 10

**FEDERAL STATUTES**

42 U.S.C.
    § 1983.............................................................................................................. passim
    § 2000d *et seq* .........................................................................................................5

**RULES**

Fed. R. Civ. P
    § 12(b)(6) .........................................................................................................1, 6, 20

MISCELLANEOUS AUTHORITIES

https://www.nysd.uscourts.gov/sites/default/files/pdf/covid-
19/Notice%20-%20Pro%20Se%20Email.pdf...........................................................................9

Defendants Vincent Boudreau, William C. Thompson, Anthony Laperuta, Wendy Thornton, George Rhinehart, and Tanni Baidya (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss the Amended Complaint (ECF No. 4) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **Preliminary Statement**

Plaintiff Bassey B. Ndemenoh ("Plaintiff"), a former student at the City College of New York ("City College"), brings this action under 42 U.S.C. § 1983 ("§ 1983"), alleging that he was falsely arrested and maliciously prosecuted by various City College employees in violation of his constitutional rights. However, Plaintiffs' claims are deficient for several reasons. First, most of Plaintiff's claims are time-barred, and he fails to demonstrate that the doctrine of equitable tolling applies. Second, Plaintiff's allegations make clear that three of the six Defendants were not personally involved in the events at issue, and Plaintiff fails to meet his pleading burden with respect to the remaining Defendants. Finally, any alleged actions by the Defendants are protected by the doctrine of qualified immunity. Accordingly, the Amended Complaint should be dismissed in its entirety as a matter of law.

## **Statement of Facts[1]**

Plaintiff is a former student at City College.  He alleges that on November 26, 2016, while he was a student at City College, Tanni Baidya, a Research Assistant who is employed by CUNY, impermissibly terminated his participation in a research study because of his age. *See* Amended Complaint at p. 4. Plaintiff alleges that he was arrested two days later by Anthony Laperuta, a campus safety officer, after he was accused of sending two emails threatening to kill an unnamed study coordinator and Dr. Robert Melara of the psychology department. *Id*. Plaintiff alleges that

---

[1] The truth of the Plaintiff's non-conclusory factual allegations is assumed for purposes of this motion to dismiss only.

1

he was searched without his consent and his electronic devices were confiscated, in violation of his fourth amendment rights. *Id*.

Plaintiff alleges that Laperuta "initiated" his malicious prosecution, providing "false and fabricated information" to authorities. *Id*. According to Plaintiff, the threatening emails were manufactured to harm him, and Laperuta instigated his prosecution because of Plaintiff's race, color, and ethnicity. *Id*. Plaintiff alleges that Laperuta dismissed his efforts to prove that the threatening emails did not come from him. *Id*. Instead, Laperuta wrote a false report that provided a basis for his arrest and prosecution. *Id*.

Plaintiff alleges that he was immediately suspended from City College, in violation of his rights to due process. *Id*. According to Plaintiff, copies of his suspension letter were sent to Wendy Thornton, who is the Dean of Student Affairs at City College, and Vincent Boudreau, who is the President of City College. *Id*. Plaintiff alleges that he appealed his suspension on November 29, 2016 and, upon his release from jail, met with George Rhinehart, "a director who also claimed to act on behalf of Dean Wendy Thornton." *Id*.

Plaintiff alleges that Rhinehart attempted to "compel[ ] and coerce" him into signing some documents in exchange for a one-semester suspension, but he resisted Rhinehart's pressure. *Id*. Thereafter, Rhinehart referred the matter to the Student Faculty Disciplinary Committee, which scheduled a hearing for December 9, 2016. *Id*. at p. 5.

Plaintiff alleges that Rhinehart subsequently informed him that the scheduled disciplinary committee hearing had been cancelled and apologized for his suspension. *Id*. Plaintiff alleges that Rhinehart also informed him that there was no evidence linking Plaintiff to the threatening emails. *Id*. Plaintiff contends that Rhinehart's verbal apology "establishes [his] innocence and serves as proof that [he] was maliciously prosecuted based on [his] race, color, and ethnicity." *Id*. Although

Plaintiff contends that Rhinehart asked him to return to school and sent emails to his professors asking them to readmit Plaintiff to their classes, Plaintiff also alleges that Rhinehart sent him an email on December 7, 2016 threatening to have Plaintiff arrested if he visited "the Psychology Department Research area," which is located on one floor in one building on City College's campus. *Id*. Plaintiff alleges that Rhinehart sent a copy of this email to Thornton. *Id*.

Plaintiff contends that by cancelling the student disciplinary committee hearing, "the college official usurped the function" of the committee, "became a court of law," violating Plaintiff's constitutional rights to a fair hearing and freedom of movement. *Id*. Plaintiff also maintains that Boudreau and Thornton failed to remedy the violations of his constitutional rights. *Id*.

Plaintiff alleges that he made complaints alleging discrimination based on his age and ethnicity, racial profiling, and maltreatment to the Chancellor of the City University of New York ("CUNY") and five unnamed City College and CUNY officials between January 3 and 31, 2017. *Id*. Plaintiff alleges that his complaints were never investigated, and his scholarship was terminated on January 23, 2017, purportedly because of his involvement in a student disciplinary matter. *Id*.

Plaintiff alleges that on February 17, 2017 he filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR"). *Id*. Plaintiff alleges that OCR did not complete its investigation, and the matter was referred back to City College because City College "opted for a voluntary resolution." *Id*. Plaintiff alleges that City College has not investigated his complaint to date. *Id* at p. 6.

Plaintiff alleges that "[c]onsistent with" Rhinehart's "threat" in the December 7, 2016 email to have him rearrested, Plaintiff was arrested at his home on March 27, 2017 "over the same salacious emails" that precipitated his first arrest. *Id*. Plaintiff alleges that Rhinehart informed him

3

via an email on March 30, 2017 that Plaintiff had been referred to the Student Faculty Disciplinary Committee for visiting certain areas of City College's campus. *Id*. Plaintiff alleges that the disciplinary committee meeting was never held and Thornton, "having been repeatedly briefed by Rhinehart," permitted the continued violation of Plaintiff's constitutional rights. *Id*.

Plaintiff alleges that he wrote to Boudreau on May 17, 2019 and informed Boudreau of the constitutional violations to which he had been subjected and identified the individuals who had been involved in these alleged deprivations. *Id*. Plaintiff alleges that Boudreau did not "correct these wrongdoings," thereby exhibiting deliberate indifference and gross negligence. *Id*.

Plaintiff alleges that on July 1, 2019, he wrote to William Thompson, who is the Chair of CUNY's Board of Trustees, to inform him of the constitutional violations to which he had been subjected. *Id*. at 7. Plaintiff alleges that Thompson also did not act, showing deliberate indifference. *Id*.

Plaintiff alleges that the cases against him were "dismissed and sealed" and he was "proven affirmatively innocent by the court" on May 31, 2017 and June 26, 2017. Plaintiff alleges that Baidya fabricated the threatening emails that led to his arrest and "colluded" with CUNY's employees to cause him severe harm. *Id*.

On the basis of these allegations, Plaintiff purports to assert claims for false arrest, malicious prosecution, "and civil rights violations" under § 1983. *Id*. at pp. 1, 4. He seeks compensatory damages in the amount of one million dollars, as well as the reversal of his suspension. *Id*. at p. 11.

## Procedural History

Plaintiff commenced this action on June 11, 2020 against CUNY, Boudreau, and the Attorney General of New York (the "Attorney General"). *See* Complaint (ECF No. 1). Although

4

Plaintiff did not identify any particular causes of action, the Court construed his Complaint as asserting claims for false arrest, malicious prosecution, and denial of due process under § 1983, as well as claims under Title VI of the Civil Rights Act of 1964. *See* Order to Amend (ECF No. 3) at p. 5.

The Court dismissed Plaintiff's original Complaint *sua sponte* on the grounds that (1) most of Plaintiff's claims were time barred because they arose outside the three-year statute of limitations applicable to § 1983 claims, and he failed to demonstrate that equitable tolling should apply; (2) Plaintiff failed to allege facts showing each defendant's direct and personal involvement in the circumstances that gave rise to the lawsuit; (3) as a prosecutor, the Attorney General is immune from civil suits for damages; (4) Plaintiff's § 1983 claim against CUNY was barred by the Eleventh Amendment; and (5) with respect to his sole timely-filed claim for malicious prosecution under § 1983, Plaintiff failed to identify the individuals who allegedly maliciously prosecuted him. *See* Order to Amend at pp. 5-10. The Court granted Plaintiff leave to amend so that he might "allege additional facts to state a valid malicious prosecution claim arising from the charges that were dismissed on June 26, 2017." *Id*. at pp. 10-11 & n.3. The Order also required Plaintiff to "explain why his § 1983… claims… are timely despite the three-year limitations period, or plead facts suggesting that his claims should be subject to equitable tolling." *Id*. at 12.

Plaintiff filed his Amended Complaint on September 21, 2020. The factual allegations in the Amended Complaint are nearly identical to those in the original Complaint. Indeed, the main changes from the original Complaint are that (i) Plaintiff now explicitly identifies the causes of action he purports to assert as claims for false arrest and malicious prosecution under § 1983; and (ii) Plaintiff has removed CUNY and the Attorney General as defendants and added Baidya, Laperuta, Rhinehart, Thornton, and Thompson instead. Aside from these procedural changes, the

5

substance of the Amended Complaint is substantially the same as the substance of the original Complaint.

Thus, the deficiencies in the original Complaint persist in the Amended Complaint. For example, Plaintiff fails to make a showing that equitable tolling should apply to his time-barred claims. In addition, the allegations in the Amended Complaint fail to demonstrate each defendant's personal involvement in the circumstances that give rise to his claims. As such, the Amended Complaint is subject to dismissal for the same reasons set forth in the Court's Order dismissing the original Complaint, as well as for the additional reasons described herein.

## Standard of Review

To avoid "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions," all civil complaints are required to overcome a basic factual threshold in order to proceed beyond the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Specifically, "[t]o survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory statements are insufficient to satisfy this standard. *Id.* In considering the legal sufficiency of a complaint, the Court is not required to accept as true "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quotations omitted).

Significantly, "even pro se plaintiffs asserting civil rights claims are not exempt from *Twombly*'s threshold that the pleadings must contain factual allegations sufficient to raise a

'right to relief above the speculative level.'" *Dawkins v. Gonyea,* 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555). For the reasons set forth below, Plaintiff has failed to satisfy the applicable pleading standards. The Amended Complaint should therefore be dismissed.

## Argument

### I.   MOST OF PLAINTIFF'S CLAIMS ARE TIME-BARRED, AND HE FAILS TO DEMONSTRATE THAT THE DOCTRINE OF EQUITABLE TOLLING SHOULD APPLY

After reviewing Plaintiff's original Complaint, the Court held that most of Plaintiff's claims were time-barred. *See* Order to Amend at p. 5. As the Court pointed out, the statute of limitations for § 1983 claims is three years in New York. *Id.* (citation omitted). Plaintiff commenced this action on June 11, 2020. *See* Complaint (ECF No. 1). Accordingly, "all claims arising from events that occurred prior to June 11, 2017 are time-barred." *See* Order to Amend at p. 6.

More specifically, the statute of limitations for a § 1983 claim for false arrest begins to run at the time the claimant becomes detained pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Plaintiff alleges that he was arrested first on November 28, 2016 and again on March 27, 2017. *See* Amended Complaint at p. 4, 6. Thus, both of Plaintiff's arrests occurred more than three years before he filed the instant lawsuit. Plaintiff's false arrest claims are therefore time-barred.

For claims based on malicious prosecution, the statute of limitations period "starts to run only when the underlying criminal action is conclusively terminated." *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995). Plaintiff alleges that the charges brought against him in connection with

his second arrest on March 27, 2017 arrest were dismissed May 31, 2017. *See* Amended Complaint at p. 7. As such, the malicious prosecution claim based on that arrest is also time-barred.

The doctrine of equitable tolling cannot save these claims. "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). Plaintiff's *pro se* status does not merit equitable tolling. *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000). Rather,

> [e]quitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period…; plaintiff was unaware of his… cause of action due to the misleading conduct of the defendant…; or where a plaintiff's medical condition or medical impairment prevented [him] from proceeding in a timely fashion… When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."

*Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted). The circumstances necessary to apply equitable tolling are not present in this case.

Plaintiff contends that equitable tolling should apply to his time-barred claims because New York City's COVID-19 restrictions prevented him from timely filing his Complaint. *See* Amended Complaint at p. 7. As an initial matter, this argument would not apply to the false arrest claim arising from Plaintiff's November 28, 2016 arrest, as that claim expired on November 28, 2019, well before any COVID-19 restrictions were implemented. With respect to his other time-barred claims, on April 1, 2020 – a mere four days after the statute of limitations had run on his false arrest claim for the March 27, 2017 arrest and eight weeks *before* it had run on his malicious prosecution claim based on the same incident – the Southern District of New York announced that

8

it would temporarily accept *pro se* filings by email.[2] According to the announcement and accompanying Standing Order, *pro se* parties who could not send documents by email could "*continue* to submit documents by regular mail or through the depository box located in the lobby" of the Courthouse. *Id*. (emphasis added). It is thus evident that the Southern District did not intend to toll statutes of limitations to compensate for COVID-19 restrictions, and instead made other accommodations for *pro se* plaintiffs. Moreover, Plaintiff fails to explain why he waited ten weeks after those accommodations became available to file his lawsuit.

Plaintiff likewise fails to explain why he did not pursue his claims in federal court prior to the implementation of any COVID-19 restrictions. "Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay. COVID-19 measures have been in effect since March 2020, and defendant could have filed his motion long before March 2020." *United States v. Barnes*, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020); *see also Randolph v. CIBC World Markets*, 219 F. Supp. 2d 399, 402 (S.D.N.Y. 2002) (dismissing complaint where the statute of limitations on state law claims expired on November 8, 2001, less than two months after the September 11, 2001 attacks, and plaintiff filed his complaint six weeks later, on December 19, 2001). Indeed, Plaintiff could have filed his claims for false arrest as early as November 28, 2016 and later amended his complaint to (1) reflect the second arrest that allegedly occurred on March 17, 2017 and (2) assert a claim for malicious prosecution once both cases were resolved in his favor. Instead, long after the statute of limitations on his claims has passed, Plaintiff now makes a cursory plea for equitable tolling without making any of the showings required to support his request.

---

[2] *See* https://www.nysd.uscourts.gov/sites/default/files/pdf/covid-19/Notice%20-%20Pro%20Se%20Email.pdf. The Court may take judicial notice of guidance documents that are published on an official government website. *J.T. v. de Blasio*, 2020 WL 6748484, at *3 (S.D.N.Y. Nov. 13, 2020).

Thus, Plaintiff's claims for (1) false arrest in connection with the November 28, 2016 arrest and (2) false arrest and malicious prosecution in connection with the March 27, 2017 arrest are time-barred and are not subject to equitable tolling. As such, they should be dismissed on that basis alone. *See United States v. Thomas*, 2020 WL 7229705, at *3 (E.D. La. Dec. 8, 2020) (denying motion to vacate on grounds that petitioner "failed to provide any explanation for why he could not have filed his motion during the first eleven months [before the pandemic]… and presented no evidence that he diligently pursued his right to file the instant motion prior to the COVID-19 pandemic"); *United States v. Preston*, 2019 WL 5150949, at *2 (E.D. La. Apr. 8, 2019) (lack of access to a library alone is insufficient to warrant equitable tolling); *Rosenwasser v. Fordham University*, 772 Fed. App'x. 1, 3 (2d Cir. 2019) (summary order) (affirming dismissal of *pro se* plaintiff's § 1983 and Title IX claims where the plaintiff failed to present "rare and exceptional circumstances warranting equitable tolling").

In any event, even if the Court determines that equitable tolling should apply to some or all of Plaintiff's time-barred claims, those claims should nevertheless be dismissed for the additional reasons set forth below.

## II.    THE DEFENDANTS MAY NOT BE SUED UNDER SECTION 1983 IN THEIR OFFICIAL CAPACITIES

Plaintiff fails to specify whether he purports to sue the Defendants in their official capacities or in their personal capacities. To the extent he purports to sue any of the Defendants in their official capacities, it is well established that a state employee, while acting in his or her official capacity, is not a person within the meaning of § 1983 and may not be sued thereunder. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70-71 (1989). Moreover, the Eleventh Amendment bars Plaintiff's Section 1983 claims against the Defendants because "[i]t is well-established that New York has not consented to § 1983 in federal court…and that § 1983 was not

intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 Fed. Appx. 191, 192 (2d Cir. 2010) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and *Quern v. Jordan*, 440 U.S. 332, 340-342 (1979)). This "jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).[3] Accordingly, the Defendants are not subject to suit in their official capacities under § 1983.

### III. PLAINTIFF'S FAILURE TO ALLEGE PERSONAL INVOVLVEMENT DEFEATS HIS CLAIMS AGAINST BOUDREAU, THOMPSON AND THORNTON

Plaintiff purports to assert claims under 42 U.S.C. § 1983. To do so successfully, Plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Where a § 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law." *Atkinson v. Okocha*, 2021 WL 40258, at *3 (E.D.N.Y. Jan. 5, 2021) (citing *Johnson v. Barney*, 360 Fed. App'x. 199, 201 (2d Cir. 2010) (summary order)); *see also* Order to Amend at p. 7.

Plaintiff fails to allege that Boudreau, Thompson, or Thornton was personally involved in any of the events at issue. Indeed, none of the allegations in the Amended Complaint personally implicates Boudreau, Thompson, or Thornton in the circumstances that give rise to this lawsuit. Plaintiff's only allegation against these three Defendants is that he sent letters and emails to each of them to apprise them of all that occurred but they never took any action. *See* Amended

---

[3] There is a limited exception for lawsuits against state officials seeking prospective injunctive relief to correct an ongoing violation of federal law. *Dube v. State University of New York*, 900 F.2d 587, 595 (2nd Cir. 1990) (permitting, under *Ex parte Young*, a § 1983 suit for prospective injunctive relief against state officers in their official capacities). However, that exception is inapplicable because, for the reasons set forth herein, Plaintiff has failed to allege any violation of federal law by the Defendants (ongoing or otherwise).

Complaint at pp. 4-7. Allegations that a defendant did not respond to written complaints are insufficient to establish the requisite personal involvement for a § 1983 claim. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 267 (S.D.N.Y. 2014) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (dismissing plaintiff's § 1983 claim against defendant whom plaintiff made aware of alleged constitutional violations through written letters but who allegedly "failed to act on that information or otherwise remedy [the] wrong"). Significantly, after considering nearly identical allegations against Boudreau in the original Complaint, the Court dismissed Plaintiff's claims against Boudreau, holding that Plaintiff had not "allege[d] any facts showing how… Boudreau [was] personally involved in the events underlying his claims." Order to Amend at p. 7. The same is true now.

Plaintiff's allegation that Thornton acted through George Rhinehart, Amended Complaint at p. 4, is likewise insufficient to establish Thornton's personal involvement. *See Gonzalez v. Sarreck*, 2011 WL 5051341, at *15 (S.D.N.Y. Oct. 24, 2011) (dismissing § 1983 claim against a defendant on the grounds that delegating a matter to a subordinate does not establish that the defendant was personally involved in a constitutional deprivation).

Because neither Boudreau, nor Thompson, nor Thornton was personally involved in any of the matters at issue, Plaintiff's § 1983 claims against them fail as a matter of law and must be dismissed.

## IV.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE THE ELEMENTS OF HIS CLAIMS AGAINST BAIDYA, RHINEHART, AND LAPERUTA

Plaintiff purports to assert claims for false arrest and malicious prosecution under § 1983. *See* Amended Complaint at p. 4. To state a claim for false arrest under § 1983, Plaintiff must allege "(1) the defendant intended to confine [him]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise

privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). To state a § 1983 claim for malicious prosecution, Plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against him; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions — as well as a violation of the plaintiff's rights under the Fourth Amendment." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017).

For the reasons described below, Plaintiff fails to meet his pleading burden in connection with either of his two false arrest claims or either of his two malicious prosecution claims. As an initial matter, Plaintiff's allegations of a grand conspiracy against him simply do not satisfy the plausibility standard set forth in *Iqbal* and *Twombly*. Moreover, Plaintiff fails to adequately allege all of the elements of any of his causes of actions. Accordingly, the claims against Baidya, Rhinehart and Laperuta must be dismissed for failure to state a claim.

A. **Plaintiff Fails to Adequately Allege the Elements of His False Arrest Claims**

1.   Plaintiff Fails to Show Intent to Confine

Plaintiff alleges that he was arrested on November 28, 2016 based on information provided by Baidya and was later proven "affirmatively innocent." Amended Complaint at pp. 4, 7. None of the allegations in the Amended Complaint contend that Baidya did anything more than provide information. "[T]he mere furnishing of information to the police will not subject the informant to liability in an action for false arrest [even] when an arrest of an innocent person results from such information." *King v. Crossland Savings Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also TADCO Const. Corp. v. Dormitory Authority of State of New York*, 700 F. Supp. 2d 253, 269-270 (E.D.N.Y. 2010) ("[A] defendant who furnishes information to police will not generally be held liable

for false arrest… [unless he/she] takes an active role in the arrest… [by] giving advice and encouragement or importuning the authorities to act with the intent to confine the plaintiff.") (citations and internal quotations omitted).

Moreover, when an officer decides, in the exercise of his own discretion, to make an arrest, the person providing information to the officer is not liable. *Lopez v. City of New York*, 901 F. Supp. 684, 688 (S.D.N.Y. 1995) (citing cases). According to Plaintiff, Laperuta arrested him notwithstanding his claims of innocence and "contextual cue[s]" that should have "convinced" Laperuta that arresting Plaintiff was unwarranted. Amended Complaint at p. 4. Thus, Plaintiff himself alleges that Laperuta made an independent judgment call regarding whether to arrest Plaintiff. Accordingly, Plaintiff fails to satisfy the intent to confine element of his false arrest claim against Baidya in connection with the November 28, 2016 arrest.

Although Plaintiff alleges that he was rearrested on March 27, 2017 "over the same malicious emails," *id.*, he fails to allege that Baidya had any role whatsoever in the circumstances that led to his second arrest. Indeed, there is not even a suggestion that Baidya provided new or additional information to the police or otherwise encouraged them to rearrest Plaintiff. *Id*. Because the allegations in the Amended Complaint fail to show Baidya's personal involvement in the circumstances that led to Plaintiff's second arrest, s*ee* Section II *supra,* or that she instigated the second arrest in any way, Plaintiff fails to state a false arrest claim against Baidya in connection with the March 27, 2017 arrest.

With respect to Laperuta, although Plaintiff alleges that he arrested him on November 28, 2016, Plaintiff fails to allege that Laperuta instigated or was otherwise personally involved in the circumstances that led to his second arrest on March 27, 2017. Indeed, Plaintiff does not even implicate Laperuta in *any* events that occurred after November 28, 2016, the date of his first arrest.

14

*See* Amended Complaint. Accordingly, Plaintiff fails to state a false arrest claim against Laperuta in connection with the March 27, 2017 arrest.

Plaintiff likewise fails to allege that Rhinehart was involved in his first arrest on November 28, 2016. Indeed, Plaintiff asserts that he first met with Rhinehart on December 1, 2016, *after* he had been arrested and released from jail the first time, and he makes no allegations that Rhinehart was aware of the circumstances that led to his arrest before it occurred. Amended Complaint at p. 4. Accordingly, Plaintiff fails to state a false arrest claim against Rhinehart in connection with the November 28, 2016 arrest.

Plaintiff's claim of false arrest against Rhinehart arising from his March 27, 2017 arrest is ostensibly predicated on an email that Rhinehart allegedly sent to Plaintiff, threatening to have him arrested if he visited the Psychology Department Research area. Amended Complaint at pp. 5-6. The mere threat to have Plaintiff arrested is insufficient to support a claim for false arrest. *Garlasco v. Stuart*, 602 F. Supp. 2d 396, 408 (D. Conn. 2009). Rather, a threat of arrest is viable if it implicates an interest protected by the Fourth Amendment. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 94-95 (S.D.N.Y. 2013). Plaintiff does not – because he cannot – allege that he had a Fourth Amendment interest in visiting the Psychology Department Research area, which is located on City College's campus. Accordingly, Plaintiff fails to state a false arrest claim against Rhinehart in connection with the March 27, 2017 arrest.

2. <u>Plaintiff Fails to Show That His Confinements Lacked Privilege</u>

A confinement is "privileged" if it is based on probable cause. *Jocks v. Tavernier*, 316 F. 3d 128, 135 (2d Cir. 2003). Probable cause provides "justification and 'a complete defense'" to an action for false arrest. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Singer*, 63 F.3d at 118 ("There can be no federal

civil rights claim for false arrest where the arresting officer had probable cause."). Because the allegations in the Amended Complaint demonstrate that both of Plaintiff's arrests were based on probable cause, his false arrest claims fail as a matter of law and should be dismissed.

Plaintiff acknowledges that Laperuta arrested him on November 28, 2016 after receiving information from Baidya but contends that Laperuta should not have trusted Baidya's complaint over his own claims of innocence. Amended Complaint at p. 4. Such allegations do not eliminate probable cause for an arrest. Indeed, it is well established that police officers are entitled to rely on a victim's allegations, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citing *Singer*, 63 F.3d at 119), and are not "required to credit a suspect's pleas of innocence" when making an arrest. *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014).

Plaintiff's allegation that he was rearrested on March 27, 2017 "over the same malicious emails," Amended Complaint at p. 6, further establishes that his arrests were made pursuant to a probable cause determination. Plaintiff alleges that he was arrested "in [his] former residence in New York," *id*., suggesting that his arrest was made pursuant to a warrant. Arrests made pursuant to an arrest warrant presumptively establish probable cause for the arrest. *Williams v. City of New York*, 916 F. Supp. 2d 235, 242 (E.D.N.Y. 2012). Accordingly, Plaintiff's false arrest claim fails as a matter of law and should be dismissed. *See Corsini*, 26 F. Supp. 3d at 242-243 (dismissing § 1983 claim for false arrest on the grounds that, *inter alia*, the arrest was made pursuant to a complaint by a purported victim and the plaintiff's own allegations "establish that each of the complained-of arrests or imprisonments were made pursuant to probable cause determinations").

B. **Plaintiff Fails to Adequately Allege the Elements of His Malicious Prosecution Claims**

1. Plaintiff Fails to Show Initiation of Criminal Proceedings

Plaintiff alleges that Baidya provided "false and fabricated information" that led to his arrest. *See* Amended Complaint at p. 4. However, "[s]imply reporting a crime, or providing facts relating to a potential crime to law enforcement, is insufficient to allege or establish the "commencement or continuation" of criminal proceedings against a plaintiff." *Nieves v. County of Monroe*, 761 F. Supp. 2d 48, 51 (W.D.N.Y. 2011) (citing *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)). Yet Plaintiff's claims against Baidya are predicated solely on her provision of information relating to a potential crime against her. Plaintiff thus fails to satisfy the "initiation of a criminal proceeding" element of his malicious prosecution claims against Baidya.

Plaintiff similarly alleges that Laperuta "initiated the malicious prosecution and provided [ ] false and fabricated information from Baidya to authorities." *See* Amended Complaint at p. 4. However, police officers may be liable for initiating a malicious prosecution only when they fabricate and forward to prosecutors evidence that they *know* to be false. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997). Plaintiff's threadbare assertion that "[c]ontextual cue was enough to have convinced Laperuta that the emails were not from me," *see* Amended Complaint at p. 4., is simply insufficient and does not satisfy the requirement articulated in *Twombly* that allegations in a pleading must be sufficient to raise a right to relief above the speculative level. 500 U.S. at 555.

Plaintiff fails to allege any facts that demonstrate that Rhinehart initiated or was otherwise involved in continuing the purportedly malicious prosecutions against him. Indeed, Plaintiff does not allege that Rhinehart furnished the authorities with any information that led to either of his arrests or prosecutions. Rather, Plaintiff alleges that his "arrests and malicious prosecution were all premeditated." Amended Complaint at p. 6. Such conclusory allegations are not entitled to the assumption of truth and cannot withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 664.

17

2. <u>There Was Probable Cause for Plaintiff's Prosecutions</u>

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-162 (citation omitted). "For a malicious prosecution claim, probable cause to prosecute consists of 'facts and circumstances that would lead a reasonably prudent person to believe the plaintiff is guilty.'" *Ying Li*, 246 F. Supp. 3d at 611 (quoting *Boyd v. City of New York,* 336 F. 3d 72, 76 (2d Cir. 2003)). "An arresting officer advised of a crime by a person who claims to be the victim ... has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. "The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." *Miloslavsky v. AES Engineering Society*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) (citation omitted). The allegations in the Amended Complaint demonstrate that there was probable cause to arrest Plaintiff. Specifically, Plaintiff alleges that he was arrested after he was accused of sending two emails in which he purportedly threatened to kill two City College employees.

"Where... probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution." *Johnson v. City of New York*, 2010 WL 2292209, at *6 (S.D.N.Y. June 7, 2010). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowga*, 82 F.3d 563, 571 (2d Cir. 1996). Plaintiff's allegations concerning his pleas of innocence and the existence of "contextual cues" cannot constitute an intervening fact. Indeed, the charges against Plaintiff were allegedly dismissed a full seven months after Plaintiff's arrest, suggesting that the charges against Plaintiff were not completely groundless.

18

### 3. Plaintiff Fails to Allege Actual Malice

Aside from characterizing the emails that were attributed to him as "malicious," and claiming that Baidya "intentionally made [them] up… with the intent of causing severe harm" to him, *see* Amended Complaint at pp. 4, 7, Plaintiff fails to allege that Baidya acted with actual malice. Actual malice "does not require a plaintiff to prove that the defendant was motivated by spite or hatred" but instead that he initiated the criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Castro v. City of Nassau*, 739 F. Supp. 2d 153, 169-170. (E.D.N.Y. 2010) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994)). Once again, Plaintiff's wholly conclusory suppositions are insufficient to sustain his burden.

With respect to Laperuta, Plaintiff alleges that Laperuta "arrested and criminalized me out of malice for what I never did" based on his race, color and ethnicity. *See* Amended Complaint at p. 4. Such wholly conclusory allegations may not survive a motion to dismiss. *See Obilo v. City University of the City of New York*, 2003 WL 1809471, at *11 (E.D.N.Y. 2003) ("bald allegations are insufficient to establish racially discriminatory intent").

Plaintiff's reliance on these same conclusory allegations likewise fails to demonstrate that Rhinehart acted with any actual malice against him. *See* Amended Complaint at p. 6 (citing to Rhinehart's December 7, 2016 email and concluding that his malicious prosecution was "premeditated" and "based on race"). Accordingly, Plaintiff has failed to state a malicious prosecution claim against Baidya, Laperuta, or Rhinehart.

## V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The defense of qualified immunity shields government officials from liability for civil damages so long as their conduct does not "violate a clearly established statutory or constitutional

right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Employees of public universities acting in their official capacities are government officials for purposes of qualified immunity. *Naumovski v. Norris*, 934 F. 3d 200, 215 (2d Cir. 2019).

Qualified immunity is "*immunity from suit* rather than a mere defense of liability" and should be determined at the earliest possible stage of a case. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). A qualified immunity defense may be asserted on a Rule 12(b)(6) motion "as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

When considering a defense of qualified immunity, courts consider (1) whether a clearly established constitutional right has been violated, and (2) "whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that the applicable law was being violated." *Vega v. Miller*, 273 F.3d 460, 466 (2d Cir. 2001). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As noted in Sections II and III *supra*, Plaintiff fails to allege personal involvement in the matters at issue by most of the Defendants. However, to the extent he does allege any actions or inactions on their part, they are protected by qualified immunity because it is evident that they all behaved reasonably. For example, Boudreau, Thompson, and Thornton's alleged failure to respond to Plaintiff's letters does not constitute a knowing violation of the law. Similarly, Rhinehart's alleged preclusion of Plaintiff from the Psychology Department Research area does not constitute a violation of a clearly established right. Baidya's provision of information relating to a potential crime against her is likewise protected conduct.

Finally, with respect to Laperuta, "an arresting officer is entitled to qualified immunity on claims of…malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *Castro*, 739 F. Supp. 2d at 171 (citing cases). Here, Laperuta arrested Plaintiff after he was accused of sending threatening emails to two City College employees. Accordingly, it was reasonable for Laperuta to believe that probable cause existed to arrest Plaintiff, and he is therefore entitled to qualified immunity. *Id*. at 173 (holding that officer who arrested plaintiff on the basis of a voice identification and witness statement was entitled to qualified immunity).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint, with prejudice, and grant such other and further relief as is deemed to be just and proper.

Dated: New York, New York
  April 16, 2021

<div style="margin-left:40%">

LETITIA JAMES
Attorney General of the
 State of New York
<u>Attorney for Defendants</u>
By:

   /s/ JOHANE SEVERIN
_____
Johane Severin
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8565
Johane.Severin@ag.ny.gov

</div>