UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BASSEY B. NDEMENOH,                                    **SECOND AMENDED COMPLAINT**

                    Plaintiff,                 Demand for Trial by Jury

    -against-                                          Docket No. 20-cv-4492 (RA)

CITY UNIVERSITY OF NEW YORK, TANNI
BAIDYA, VINCENT BOUDREAU, JUANA
REINA, ANTHONY LAPERUTA, RONDELL
GOPPY, WILLIAM THOMPSON, JR., GEORGE
RHINEHART, WENDY THORNTON, DONICE
MOREAU, RAMON PORTILLO, GUILLERMO
SUAREZ, ALBERT TROTTER, LOURON HALL,
PAUL OCHIOGROSSO, PASQUALE MORENA,
FELIX RODRIGUEZ, WILLIAM BARRY, DEE
DEE MOZELESKI, CITY OF NEW YORK,
MICHAEL LEDERHANDLER and ALEXANDRA
COVELESKI,

                    Defendants.
-------------------------------------------------------------X

        Plaintiff, BASSEY B. NDEMENOH, by and through the undersigned attorneys, Sim &

DePaola, LLP, for his complaint against the Defendants, CITY UNIVERSITY OF NEW YORK,

TANNI BAIDYA, VINCENT BOUDREAU, JUANA REINA, ANTHONY LAPERUTA,

RONDELL GOPPY, WILLIAM THOMPSON, JR., GEORGE RHINEHART, WENDY

THORNTON, DONICE MOREAU, RAMON PORTILLO, GUILLERMO SUAREZ, ALBERT

TROTTER, LOURON HALL, PAUL OCHIOGROSSO, PASQUALE MORENA, FELIX

RODRIGUEZ, WILLIAM BARRY, DEE DEE MOZELESKI, CITY OF NEW YORK,

MICHAEL LEDERHANDLER and ALEXANDRA COVELESKI, alleges and states as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action, in which plaintiff seeks relief, vis-à-vis sections 1981, 1983,

1985, 1986 and 1988 of title 42 to the United States Code, the common law of the State of New

York, in addition to the self-executing clauses or implied private causes of action of the New York

State Constitution, for the violations of his civil rights, as guaranteed and protected by the First,

Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, as well

as the Laws and constitution of the State of New York.

2.      Plaintiff's claims stem from November 28, 2016, and March 26, 2017, incidents, in which

defendants, acting under color of state law, caused Plaintiff and his property to be unlawfully

stopped, questioned, searched, seized, arrested and detained in the absence of probable cause to

believe Plaintiff had committed any crime or violation of the law. As a result of Plaintiff's wrongful

arrests by defendants on November 28, 2016, and March 26, 2017, he was unlawfully detained for

periods of twenty-six (26) hours and twelve (12) hours, respectively.

3.      Plaintiff was thereafter subjected to successive criminal prosecutions charging him with

Aggravated Harassment in the Second Degree and other related offenses in the counties of New

York and Queens. The New York County prosecution was initiated by defendants upon the filing

of the criminal court complaint with the Criminal Court of the City of New York, County of New

York, on, or about, November 29, 2016, and was terminated in favor of Plaintiff on June 26, 2017.

The Queens County prosecution was caused to be initiated by defendants on, or about, March 26,

2017, and was terminated in favor of Plaintiff on May 31, 2017. Both criminal prosecutions were

dismissed and sealed on the merits, pursuant to section 160.50 of the New York Criminal

Procedure Law, after the dearth of probable cause to support his two arrests, as well as the criminal

prosecutions that ensued, was conclusively established along Mr. Ndemenoh's innocence of all adverse charges.

4.      Plaintiff was also suspended from attending school at the City University of New York, which resulted in blemish to his permanent student record which has persisted to this day.

5.      Plaintiff seeks monetary damages (compensatory and punitive) against defendants, an award of costs and reasonable attorney's fees, with all interest then accrued, as well as injunctive relief to compel the removal of his suspension from his student record by defendants, and such other and further relief, as this Court may deem just and proper.

## JURISDICTION

6.      This action arises under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, the constitution of the State of New York and the laws of the City and State of New York.

7.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

8.      Venue is properly laid within the Southern District of New York, as Defendant, City University of New York, is located and conducts business in the Southern District of New York and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391(b).

**PARTIES**

9.      Plaintiff, BASSEY N. NDEMENOH ("Mr. Ndemenoh"), is a Black male immigrant from the African nation of Nigeria, where he maintains citizenship status, and who presently resides in the County, City and State of New York.

10.     Defendant, CITY UNIVERSITY OF NEW YORK ("CUNY" or "City College"), is a public university comprised of twenty-five colleges, including the City College of New York, which are jointly run, operated and maintained by the City and State of New York and which receive funding from said local municipal and state sources, in addition federal funding from the United States.

11.     Defendants, VINCENT BOUDREAU ("BOUDREAU"), TANNI BAIDYA ("BAIDYA"), JUANA REINA ("REINA"), WILLIAM THOMPSON, JR. ("THOMPSON"), ANTHONY LAPERUTA ("LAPERUTA"), RONDELL GOPPY ("GOPPY"), GEORGE RHINEHART ("RHINEHART"), WENDY THORNTON ("THORNTON"), PAUL OCHIOGROSSO ("OCHIOGROSSO"), PASQUALE MORENA ("MORENA"), FELIX RODRIGUEZ ("RODRIGUEZ"), MICHAEL LEDERHANDLER ("LEDERHANDLER"), WILLIAM BARRY ("BARRY"), DEE DEE MOZELESKI ("MOZELESKI") and ALEXANDRA COVELESKI ("COVELESKI"), were, at all times here relevant, employed in various capacities by CUNY, the State of New York, or the City of New York, and, as such, were acting in the capacities of agents, servants and employees of CUNY, the State of New York or the City of New York. Defendants are being sued in their individual and official capacities.

12.     The Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

13.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

14.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

15.     Defendants, DONICE MOREAU ("MOREAU"), RAMON PORTILLO ("PORTILLO"), GUILLERMO SUAREZ ("SUAREZ"), ALBERT TROTTER ("TROTTER"), LOURON HALL ("HALL"), were, at all times here relevant, police officers, detectives, sergeants, lieutenants, or other supervisory officers employed by the City of New York ("City") or the New York City Police Department ("NYPD") and, as such, was acting in the capacity of an agent, servant and employee of the defendant, City of New York. Defendants were, at the times relevant herein, police officers, detectives, sergeants, lieutenants, or other supervisory officers, assigned to 107th Precinct, located at 153 East 67th Street, New York, New York. Defendants MOREAU, PORTILLO, SUAREZ, TROTTER and HALL are being sued in their individual and official capacities.

16.     At all relevant times herein, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

## FACTUAL CHARGES

17.     On October 20, 2016, at 2:30 p.m., Mr. Ndemenoh received a message via email confirming that he has been signed up to participate in a study scheduled for November 28, 2016,

from 10:00 a.m., until 12:50 p.m., conducted by Defendant BAIDYA, a City College research associate, in exchange for earning three (3) educational credits.

18.     On, or about, Friday, November 25, 2016, Mr. Ndemenoh received a telephone call from Defendant BAIDYA confirming his participation in the study scheduled to proceed on Monday, November 28, 2016, and assuring Plaintiff that he would receive a confirmatory email shortly thereafter.

19.     Upon checking his email, Mr. Ndemenoh received a message that his participation in the study had been cancelled without any providing any explanation or reasons therefor.

20.     On November 26, 2016, at 2:39 p.m., Mr. Ndemenoh messaged Defendant BAIDYA via email to clarify that he did not cancel his appointment to participate in the study, as he remained committed to participating pursuant to the confirmation he received on October 20, 2016, and kindly requested that Defendant BAIDYA remedy the problem, while also advising that Plaintiff would still appear participate in the study as scheduled.

21.     On November 26, 2016, at 2:50 p.m., Mr. Ndemenoh was informed by Defendant BAIDYA via email that he could no longer participate in said study because he was over twenty-five (25) years old, despite no such requirement being listed on the detailed description of the study, which stated that only eligibility requirements as being eighteen (18) years of age or older, and possessing normal hearing, since it was an auditory based study.

22.     On November 26, 2016, at 3:03 p.m., Mr. Ndemenoh advised Defendant BAIDYA via email that he was upset due to the last-minute cancellation notice, that he qualified to participate in the study as per the eligibility requirements and his receipt of the confirmation email, and that he intended to file a formal complaint with Dr. Robert Melara, the supervising psychology

professor, in addition to the dean, as he believed he was being unfairly discriminated against on the basis of his race, national origin, ethnicity, citizenship status, or age.

23.     On November 26, 2016, at 4:01 p.m., Defendant BAIDYA responded to Mr. Ndemenoh via email that she will now be able to accommodate Plaintiff, that the cancellation was due to subject policy rule and was not discriminatorily motivated and requested that Mr. Ndemenoh report to the location of the study on City College campus as scheduled to participate in the study in exchange for the three (3) promised educational credits.

24.     Defendant BAIDYA, however, falsely advised Mr. Ndemenoh that his participation in the study was being canceled for failing to satisfy the age pre-requisite by being over the age of twenty-five (25), as the officially reported mandatory criteria were noticeably bereft of any such age restriction and required only that each participant be *over* the age of eighteen (18), which Mr. Ndemenoh clearly was.

25.     On Sunday, November 27, 2016, at 4:06 a.m., Defendant BAIDYA sent a message to Dr. Robert Melara, the supervising professor, via a fraudulent email account (basseyndemenoh@gmail.com) she created to make it appear as if it was sent from Mr. Ndemenoh, stating "Fuck you Dr. Melara. You are a disgusting piece of shit you dumb motherfucker. I hope all of you die and go to jail. I will come and destroy all of your lives. Bassey."

26.     On Sunday, November 27, 2016, at 8:35 a.m., Defendant BAIDYA sent a message to herself via the same fraudulently created email account (basseyndemenoh@gmail.com), containing similar profanity laced threats to seriously injure, maim and even kill Defendant BAIDYA, which concluded with Defendant BAIDYA writing "Bassey Ndemenoh" as an email signature.

27.     On November 28, 2016, Defendant REINA, City College Vice President for Student Affairs, informed Mr. Ndemenoh by letter sent via email, with courtesy copies sent to Defendants THONRTON and RHINEHART, the City College Dean of Student Affairs and Director of Community Standards, respectively, that City College Public Safety received a report that Plaintiff "threatened to kill Prof. Robert Melara and a research associate in the psychology department."

28.     Said letter also advised Mr. Ndemenoh that he was being temporarily suspended from City College, effective immediately, until a hearing can be scheduled to determine the appropriate disciplinary action, as his alleged conduct "represents a violation of the City College Code of Student Conduct (specifically rules 1 and 7) and New York State Criminal Law."

**<u>Arrest on November 28, 2016</u>**

29.     On November 28, 2016, at approximately 10:00 a.m., inside of 160 Convent Street, New York, New York, Mr. Ndemenoh was approached by, or at the direction of defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY, who did so with their arms outstretched in a threatening and intimidating manner.

30.     At said date, time and location, Mr. Ndemenoh was lawfully within said premises, as a matriculated student in his senior year majoring in psychology at the City College of New York ("City College").

31.     Mr. Ndemenoh was then informed by defendants, including LAPERUTA, the City College Assistant Director of Public Safety and Director of Investigations, and GOPPY, a Campus Security Specialist and Peace Officer, that Mr. Ndemenoh needed to come with them to discuss an important matter.

32.     Mr. Ndemenoh was then forcibly escorted to the City College Public Safety Office by, or at the direction of defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA

and GOPPY, where he was unlawfully interrogated, searched, detained and deprived of various other civil rights in the absence of probable cause to believe to he had committed any crime or violation of the law.

33.    By, or at the direction of defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY, Mr. Ndemenoh was searched and handcuffed in the absence of any reasonable suspicion or probable cause to believe that Plaintiff had committed any crime or violation of the law.

34.    Defendants, including MORENA, LEDERHANDLER, BARRY LAPERUTA or GOPPY, restrained and restricted Mr. Ndemenoh's freedom of movement by physically grabbing Plaintiff about his arms and body before violently contorting his arms behind his back and affixing metal handcuffs to his wrists in an excessively tight fashion, which caused Plaintiff to sustain substantial physical pain and discomfort, despite multiple pleas for said defendants to loosen his handcuffs

35.    Mr. Ndemenoh's cell phone, laptop and other personal items were confiscated by, or at the direction of, defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY, without just cause, as said defendants did not possess any reasonable suspicion or probable cause to believe that Mr. Ndemenoh had committed *any* crime of violation of the law.

36.    Mr. Ndemenoh and his property, including his laptop and cell phone, were therefore unlawfully seized by, or at the direction of, defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY.

37.    Mr. Ndemenoh's personal belongings, including his laptop and cell phone, were never returned to him.

38.     Defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY, did not possess a valid, judicially authorized warrant for the arrest of Mr. Ndemenoh or search or seizure of his property, including his laptop and cell phone.

39.     Mr. Ndemenoh repeatedly inquired as to why he was being detained against his will.

40.     Defendants, including MORENA, LEDERHANDLER, BARRY LAPERUTA or GOPPY, eventually responded by informing Mr. Ndemenoh that he was being arrested for sending threatening emails to Defendant TANNI BAIDYA and Dr. Robert Melara, who was then Plaintiff's psychology professor at City College, and by showing Plaintiff copies of the threatening emails which defendants baselessly alleged to have been authored and transmitted by Mr. Ndemenoh, despite the absence of even a scintilla of evidence to support such accusations and the presence of immediately accessible evidence that would have further corroborated Plaintiff's denials of any wrongdoing and claims of innocence to the point of near incontrovertibility upon conducting even a cursory investigation that would have required only a minimal expenditure of time or resources.

41.     Mr. Ndemenoh advised defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA or GOPPY, that he never sent *any* threatening emails, that said emails were not from any email address affiliated with Plaintiff, as such were never created, authorized, used or even recognized by Plaintiff, and repeatedly offered to prove his innocence via immediately accessible exculpatory evidence by showing defendants the complete and unedited email exchanges between himself and Defendant BAIDYA, in addition to consenting to have his entire laptop and cell phone searched and inspected for any trace of the offensive emails or email addresses or accounts from which they emanated.

42.     Defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA or GOPPY, refused Mr. Ndemenoh's offers to review said email exchanges or inspect his laptop or cell phone, which were readily accessible to defendants, as both items were confiscated by said defendants from Plaintiff only minutes before.

43.     Defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA or GOPPY, offered no reason or explanation for their obstinate refusal to examine Mr. Ndemenoh's confiscated laptop or cell phone that was in their possession to attempt to verify or investigate any of Plaintiff's adamant denials and, instead, arranged for his removal to the 26th Precinct of the NYPD, where Mr. Ndemenoh was subjected to further unauthorized searches of his person and property in the absence of probable cause to believe that he had committed any crime or violation of the law.

44.     Mr. Ndemenoh was thereafter transferred to central booking, where he would await arraignment.

45.     On November 29, 2016, at approximately 12:00 p.m., Mr. Ndemenoh was released from custody after being arraigned and falsely charged with Aggravated Harassment in the Second Degree, a Class A misdemeanor criminal offense under the New York Penal Law. N.Y. Penal Law § 240.30(1)(a).

46.     Defendants, including BAIDYA, MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY, falsely alleged that Mr. Ndemenoh emailed defendant BAIDYA threatening to physically harm her, her family and others, when said defendants knew such claims to be untrue and complete fabrications.

47.     Mr. Ndemenoh pleaded "not guilty" prior to being released on his own recognizance by the arraigning judge and was ordered to return to court on all subsequent appearance dates to

contest the false charge levied against him by, or  at the direction of, defendants, including BAIDYA, MORENA, LEDERHANDLER, BARRY, LAPERUTA and GOPPY.

48.     On, or about, November 29, 2016, upon Mr. Ndemenoh's release from physical custody following his arraignment in New York County Criminal Court, he promptly appealed his suspension from City College and informed defendants RHINEHART, THORNTON, REINA, MORENA, LEDERHANDLER and BARRY that he never sent any threatening emails to Defendant BAIDYA or Professor Melara, but that Plaintiff cannot prove his innocence or complete his schoolwork because his cell phone and laptop were confiscated from him by, or at the direction of defendants, including MORENA, LEDERHANDLER, BARRY, LAPERUTA or GOPPY, from the City College Department of Public Safety.

49.     On, or about, November 30, 2016, Mr. Ndemenoh personally met with Defendant RHINEHART, Director of Community Standards for City College, inside the City College Student Affairs Office, where Defendant RHINEHART, who advised Plaintiff that he was acting on authority and on behalf of Defendant THORNTON, the City College Dean of Student Affairs, threatened and attempted to coerce Plaintiff to sign various documents in acceptance of a one (1) semester suspension, which was rejected by Plaintiff, who instead inquired as to why City College has not investigated the matter or provided him with a fair hearing, as previously promised.

50.     In response to the refusal of Mr. Ndemenoh to accept the offer conveyed by defendants, including RHINEHART, THORNTON, one (1) semester suspension, Defendant RHINEHART reluctantly referred the matter to be heard by Student Faculty Disciplinary Committee on December 9, 2016, which Plaintiff agreed to attend.

51.     Said hearing by the Disciplinary Committee, however, did not take place, because on, or about, December 7, 2016, inside Defendant RHINEHART's office, Mr. Ndemenoh was personally

informed of the hearing's cancellation by Defendant RHINEHART, who proceeded to apologize for the inconvenience and interruption to Plaintiff's studies caused by the allegations made against him, as defendants, including RHINEHART, THORNTON, REINA, LAPERUTA, GOPPY, MORENA, LEDERHANDLER and BARRY, had confirmed that Mr. Ndemenoh did not send the subject malicious and threatening emails and that Mr. Ndemenoh was innocent of the allegations against him.

52.    On, or about, December 7, 2016, an email was sent by, or at the direction of, defendants, including RHINEHART, THORNTON, REINA, LAPERUTA, GOPPY, MORENA, BARRY and LEDERHANDLER, to Mr. Ndemenoh's professors requesting that Plaintiff be readmitted to their classes.

53.    Despite issuing said apology to Mr. Ndemenoh and confirming his innocence, Defendant RHINEHART sent a message to Plaintiff via email on December 7, 2016, prohibiting him from entering the Psychology Department research area, threatening Plaintiff with a second arrest should he fail to comply.

54.    In January of 2017, Mr. Ndemenoh advised defendants, including BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, via email that he was unfairly discriminated against and wrongfully arrested by City College employees, who continued to maliciously prosecute Plaintiff in New York County Criminal Court, under Docket Number 2016NY069774, for sending threatening email messages to Defendant BAIDYA and Professor Melara, despite his innocence of all wrongdoing being confirmed by defendants, including THORNTON, MORENA, LAPERUTA, GOPPY, BARRY,

LEDERHANDLER and RHINEHART, who were able to conclusively determine that the offensive and threatening emails were *not* sent by Mr. Ndemenoh.

55.     Mr. Ndemenoh never received a response from any representative of CUNY or City College, including the named defendants herein, despite sending numerous additional messages via both email and regular mail advising said defendants, including BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, that Plaintiff was fully exonerated and vindicated of all wrongdoing, upon an investigation conclusively revealing that the subject emails threatening Defendant BAIDYA and Professor Melara were sent by Defendant BAIDYA via two (2) email accounts she fraudulently created by to make it appear as if the subject emails were sent from Mr. Ndemenoh.

56.     Mr. Ndemenoh also advised defendants, including BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, via numerous messages sent via both email and regular mail that defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, intentionally, recklessly or negligently caused Plaintiff to be subjected to wrongful arrests, malicious prosecutions and other City College disciplinary procedures in the absence of probable cause or any other legal justification therefor.

57.     Defendants, including BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, also impermissibly discriminated against

Plaintiff on the basis of his race, ethnicity, national origin, citizenship status or age, as said defendants clearly did not believe that the serious allegations against Mr. Ndemenoh were worthy of even the most perfunctory of investigations, which would have conclusively established Plaintiff's innocence at any point in time, beginning from the date of his initial arrest on November 28, 2016, as defendants gratuitously and improperly credited Defendant BAIDYA'S knowingly false and pre-meditated allegations against Plaintiff while simultaneously discounting Plaintiff's denials without any basis to justify such biased and discriminatory behavior.

58.     In the alternative, Mr. Ndemenoh alleges that defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, caused Mr. Ndemenoh to be falsely arrested, wrongfully imprisoned, maliciously prosecuted and impermissibly discriminated against by acting tacitly or expressly approving or ratifying the Constitutionally violative behavior described herein, or by responding with deliberate indifference to the commission of such acts in clear contravention of Plaintiff's civil rights.

59.     Mr. Ndemenoh was therefore maliciously prosecuted and denied his rights to fair trial, to be free from prosecution using fabricated evidence and to be afforded Due Process of law by defendants, including BAIDYA, LAPERUTA, GOPPY, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, until the criminal proceedings, under New York County Criminal Court Docket Number 2016NY069774, were terminated in favor of Plaintiff on June 26, 2017, when all charges were unconditionally dismissed and sealed on the

merits upon motion of the District Attorney of New York County ("DANY"), pursuant to sections 160.50 and 160.60 of the New York Criminal Procedure Law.

60.    Mr. Ndemenoh asserts that he was caused to be falsely accused and thereafter arrested and criminally prosecuted by defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, in retaliation for Plaintiff's expression of his intent to inform the dean of City College of the unlawful discrimination on the basis of Plaintiff's age, race, national origin, ethnicity or citizenship status perpetrated against him by Defendant BAIDYA.

61.    Mr. Ndemenoh further asserts that he was caused to be falsely accused and thereafter arrested and criminally prosecuted by defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ and THOMPSON, to prevent or otherwise inhibit Plaintiff from reporting the impermissibly discriminatory acts on the basis of Plaintiff's age, race, national origin, ethnicity or citizenship status by Defendant BAIDYA to the Dean or other appropriate authorities.

## Arrest on March 26, 2017

62.    On March 26, 2017, at approximately 10:00 a.m., inside of 1749 Grand Concourse, Apartment Number 7I, The Bronx, New York, defendants, including PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, approached Mr. Ndemenoh with their arms outstretched in a threatening and intimidating manner.

63.    Defendants, including PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, then ordered Mr. Ndemenoh to come with them, because Plaintiff was being placed under arrest.

64.     Defendants, including PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, then placed Mr. Ndemenoh under arrest by physically grabbing Plaintiff about his arms and body before violently contorting his arms behind his back and affixing metal handcuffs to his wrists in an excessively tight fashion, which caused Plaintiff to sustain substantial physical pain and discomfort, despite multiple pleas for said defendants to loosen his handcuffs.

65.     Defendants, including PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, did not possess a valid, judicially authorized warrant for the arrest Mr. Ndemenoh or search of his property, including his residence at 1749 Grand Concourse, Apartment Number 7I, The Bronx, New York.

66.     Defendants, including PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, proceeded to remove Mr. Ndemenoh to the 107th Precinct of the NYPD against his will, where said defendants subjected Plaintiff to various unlawful searches and interrogation procedures in the absence of any reasonable suspicion or probable cause to believe that Plaintiff had committed any crime or violation of the law.

67.     Mr. Ndemenoh was thereafter transferred to Queens County central booking, where he would await arraignment before a judge of the Criminal Court of the City of New York, County of Queens.

68.     On March 26, 2017, at approximately 11:00 p.m., Mr. Ndemenoh was arraigned and falsely charged with Criminal Contempt in the Second Degree, Aggravated Harassment in the Second Degree and Harassment on the basis of a complaint by Defendant BAIDYA. N.Y. Penal Law §§ 215.50(1), 240.30(1)(a) and 240.26(1).

69.     Defendants, including BAIDYA, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, falsely alleged that Mr. Ndemenoh violated the full order of protection that was issued in

relation to the then pending criminal court proceedings in New York County by again emailing defendant BAIDYA and threatening to physically harm her, her family and others, when said defendants knew such claims to be untrue and complete fabrications.

70.     Mr. Ndemenoh pleaded "not guilty" prior to being released on his own recognizance by the arraigning judge who ordered Plaintiff to return to court on all subsequent court appearance dates to contest the false charge levied against him by defendants, including BAIDYA, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, engaged in the suppression of exculpatory evidence, gross deviations from proper police or City College procedures, perjury, other misconduct committed in bad faith, in addition to the fabrication of incriminatory evidence that said defendants forwarded to prosecutors in both New York and Queens County in the form of a subsequent threatening email message to Defendant BAIDYA that was falsely alleged by said defendants to be have been sent by Mr. Ndemenoh in violation of the full of order of protection issued in connection with the criminal proceedings that were still pending in  New York County, under Docket Number 2016NY069774.

71.     Mr. Ndemenoh was thereafter compelled to appear personally in court, until the criminal proceedings, under Queens County Criminal Court Docket Number CR-011451-17QN, were terminated in his favor on May 31, 2017, when all adverse charges were unconditionally dismissed and sealed on the merits, after Plaintiff's innocence was unquestionably confirmed, pursuant to section 160.50 of the New York Criminal Procedure Law.

72.     Said Queen County Criminal Court proceedings were unconditionally dismissed and sealed after it was determined that the subject threatening email sent on March 10, 2017, at 6:14 p.m., in violation of the full order of protection issued in connection with Plaintiff's then ongoing criminal prosecution in New York County was actually sent from Defendant BAIDYA.

73.    It was further conclusively established that Defendant BAIDYA created a *second* fraudulent email account (bndemenoh@gmail.com), which was *again* designed to appear as if it was authored and sent by Mr. Ndemenoh.

74.    Upon investigation, it was incontrovertibly established that both email accounts used to send the threatening emails were, in fact, created and sent by Defendant BAIDYA because both email accounts, in addition to each of the threatening emails, were connected to IP addresses linked to Defendant BAIDYA and had no connection or relation to Mr. Ndemenoh, whatsoever.

**General Violations of Mr. Ndemenoh's Civil Rights**

75.    Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, did not possess probable cause or other justification for the arrest or seizure Mr. Ndemenoh's person or personal effects on any date, including November 28, 2016, and March 26, 2017.

76.    Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, never observed Mr. Ndemenoh commit *any* crimes of violations of the law.

77.    Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, completely fabricated the existence of each and every threatening email falsely alleged to have been sent by Mr. Ndemenoh, or were aware of such fabrications, so that

Plaintiff would be arrested and subsequently subjected to criminal prosecutions on two separate and distinct occasions, as previously described herein.

78.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, conspired with one another verbally in person or telephonically, or via the use of electronic or digital means, such as text messages or emails, to ensure that Plaintiff was arrested on November 28, 2016, and March 26, 2017, and that two related, yet distinct, criminal prosecutions would be initiated and thereafter maintained against Mr. Ndemenoh to prevent him from asserting or proving his claims of unlawful discrimination, wrongful arrest or malicious prosecution by CUNY employees, including Defendant BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL.

79.     Prior to Mr. Ndemenoh's arrests on both November 28, 2016, and March 26, 2017, defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, were fully aware that the offensive emails for which Plaintiff was arrested were not sent by Mr. Ndemenoh and that he was innocent of the charges falsely alleged against him.

80.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI,

OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, therefore, fabricated false evidence and ordered the arrest and the initiation of the criminal prosecution against Mr. Ndemenoh in retaliation for his prior successful lawsuit against the City of New York, Lunsford, Milfort, Doran and Clark.

81.    Defendant Sample did not order the arrest or the initiation of the criminal prosecution against Mr. Ndemenoh, due to the presence of probable cause or for the purpose of obtaining a criminal conviction against Mr. Ndemenoh, but did so, instead, for the purposes of diminishing Mr. Ndemenoh's credibility, punishing Mr. Ndemenoh for the commencement and success of his prior lawsuit and for incurring the favor of Lunsford, Milfort, Doran and Clark.

82.    Defendants, including Sample, Liebowitz and John Doe 1, also arrested, detained and caused the criminal prosecution to be initiated against Mr. Ndemenoh in retaliation for Mr. Ndemenoh's refusal to follow defendant Sample's directives or recommendations to shake hands with Mr. Bruno and to "forget about" the incident.

83.    Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, unlawfully discriminated against Mr. Ndemenoh, a Black male immigrant from Nigeria, by unjustifiably and gratuitously arresting Mr. Ndemenoh without any credible or objective evidence establishing probable cause to believe that said emails were sent by Plaintiff and despite being in possession of exculpatory evidence and information, which said defendants refused to review or even acknowledge.

84.    Defendants, including BAIDYA, subjected Plaintiff to unlawful selective treatment by cancelling Plaintiff's participation in the study he was scheduled to participate in, while not

cancelling any of the other scheduled participants, who were *not* Black, over the age of the thirty, or immigrants or citizens of the African nation of Nigeria.

85.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, subjected Plaintiff to unlawful selective treatment by arresting him in the absence of any probable cause instead of Defendant BAIDYA, who is *not* Black or an immigrant from Nigeria.

86.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, further unlawfully discriminated and retaliated against Mr. Ndemenoh by denying him the right or opportunity to file a criminal complaint or report against Defendant BAIDYA for unlawfully discriminating against him and for falsely filing two (2) criminal complaints against Plaintiff predicated upon emails that were fraudulently and maliciously fabricated by Defendant BAIDYA.

87.     Defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, proceeded to forward said false information to the New York  and Queens Counties District Attorneys' Offices, so that criminal prosecutions would be initiated against Mr. Ndemenoh, despite being fully aware that said allegations were completely false and based upon the fabricated emails send by Defendant  BAIDYA from fraudulently created email accounts.

88.     Defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, acting with malice, conveyed the aforementioned false, misleading and incomplete information to prosecutors in order to have Mr. Ndemenoh prosecuted for Harassment in the Second Degree and other related charges.

89.     Defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, directed, requested or otherwise improperly influenced the decision to falsely arrest and maliciously prosecute Mr. Ndemenoh on both separate occasions.

90.     Defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, suppressed and fabricated evidence, grossly deviated from proper police procedure and engaged in conduct undertaken in bad faith, namely the withholding of Mr. Ndemenoh's rendition of the events, the aforementioned fabrication of the subject threatening emails and false information, the attempted coercion of Mr. Ndemenoh to falsely confess to sending the emails, and the denial of Mr. Ndemenoh's right to file a criminal complaint against Defendant BAIDYA, who otherwise should have been arrested and criminally charged.

91.     At all times relevant hereto, defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER,

SUAREZ, MOREAU and HALL, were involved in the decisions to arrest, detain or prosecute Mr. Ndemenoh without probable cause or failed to intervene when they observed others arresting, detaining or prosecuting Mr. Ndemenoh without probable cause.

92.     At all times relevant hereto, defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, engaged in fraud, perjury, the suppression, manipulation or fabrication of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Mr. Ndemenoh's malicious prosecution.

93.     Mr. Ndemenoh asserts that defendants, BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, illegally targeted, falsely arrested and caused the initiation of criminal prosecutions against him in retaliation for the expression of his intent to report the impermissible discriminatory behavior of Defendant BAIDYA and because of their racial, ethnic, or age based discriminatory prejudices, as well as their desire to meet an arrest quota or to benefit from increased overtime compensation that would result from Plaintiff's wrongful arrests and subsequent criminal prosecutions.

94.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, arrested Mr. Ndemenoh, not because of any probable cause to believe he had committed any crimes or violations of the law, but because Mr. Ndemenoh is a Black male

immigrant from the nation of Nigeria, where he maintains citizenship, or because he had expressed his intention to assert his rights under the Constitution of the United States by reporting the unlawful and impermissibly invidious discrimination against him by Defendant BAIDYA on the basis of Plaintiff's race, ethnicity, age, national origin or citizenship status.

95.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, perpetrated multiple overt acts in furtherance of their obviously discriminatory and retaliatory inclinations and motivations, namely the fabrication the email accounts and emails used to convey the offensive and threatening remarks, the fabrication of false allegations, the attempted coercion of Plaintiff to accept responsibility for said emails, the false arrests, illegal detention and subsequent malicious prosecutions of Mr. Ndemenoh, as well as the direct or indirect denial of Mr. Ndemenoh's right to pursue criminal charges against Defendant BAIDYA.

96.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, unlawfully conspired with one another, to unlawfully arrest, detain and maliciously prosecute Mr. Ndemenoh, all in furtherance of their mutual and shared desire to retaliate against or prevent Mr. Ndemenoh from asserting his claims of illegal discrimination against CUNY employees, including the named defendants herein.

97.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI,

OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, committed various overt acts in furtherance of said unlawful conspiracy, including each individual defendant's participation in, or knowledge of, a communication between two or more of the individually named defendants that detailed or otherwise set forth the plan or design to falsely arrest, detain and maliciously prosecute Mr. Ndemenoh on each separately described occasion herein.

98.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, committed overt acts in furtherance of their retaliatory and conspiratorial designs against Mr. Ndemenoh, by soliciting, importuning, or acquiescing to the commission of the acts previously described during the aforementioned communication that transpired at some point prior to each of Mr. Ndemenoh's arrests.

99.     Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, possessed no valid reason to arrest, detain or cause a criminal prosecutions to be initiated against Mr. Ndemenoh, or to deny Mr. Ndemenoh the opportunity to file a criminal complaint against Defendant BAIDYA, the true and sole criminal offender, which gives rise to the strong inference that said unlawful acts were discriminatorily or retaliatorily motivated and perpetrated in furtherance of said impermissible motivations, as well as the aforementioned conspiracy.

100.    Defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, subjected Mr. Ndemenoh to disparate treatment compared to other individuals similarly situated, such as Defendant BAIDYA and the other individuals scheduled to participant in the subject study, who were not Black, immigrants, over the age of thirty-five (35) or citizens of Nigeria, because defendants did not arrest or cause criminal prosecutions to be initiated or thereafter maintained against Defendant BAIDYA or said other study participants, despite the fact that Defendant BAIDYA was proven to be the true perpetrator of the very same crimes said defendants did not hesitate to have Plaintiff arrested and criminally prosecuted for.

101.    Accordingly, if there was probable cause to arrest either of individuals involved in the underlying criminal incident, Mr. Ndemenoh and Defendant BAIDYA, it existed solely for Defendant BAIDYA.

102.    The unlawful arrests, detention and criminal prosecutions of Mr. Ndemenoh, were performed by or carried out at the direction or behest of defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, adversely affected or chilled Mr. Ndemenoh's desire to engage in activities or speech protected by the First Amendment, such as his right to report acts of unlawful discriminatory conduct, crimes committed against him or to otherwise report the misconduct of employees of CUNY, a federally funded institution of higher learning, to disagree with public officials from CUNY or the NYPD, or to pursue court sanctioned redress for violations of his civil rights.

103.    Mr. Ndemenoh's unlawful arrest and detention adversely affected his ability to file a criminal complaint against Defendant BAIDYA and chilled his desire to request police assistance, disagree with a police officer's recommendation to refrain from making a formal criminal complaint or report, or to engage in further litigation against CUNY, the NYPD or its employees, because the instant arrests and acts of defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, physically or effectively prevented him from reporting the misconduct of CUNY or NYPD employees, diminished Mr. Ndemenoh's credibility, and caused him to be fearful of future retaliatory acts if he engaged in the aforementioned constitutionally protected speech or activities.

104.    Plaintiff asserts that the defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within CUNY, the NYPD and City of New York or, at the very least, conclusive evidence that CUNY, the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

105.    The individually named defendants herein, as well as other officials or officers serving in the employ of CUNY, the NYPD and City of New York, have blatantly, shamelessly, consistently

and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of CUNY, the NYPD, the City of New York and their respective policymakers and supervisors.

106.   Plaintiff therefore asserts that CUNY the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within CUNY, the NYPD or the City of New York that resulted in Plaintiff's arrests and subsequent criminal prosecutions in the absence of probable cause.

107.   CUNY, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

108.   Defendants' actions, pursuant to Plaintiff's underlying arrests, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of CUNY, the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of CUNY, the NYPD and City of New York.

109.   Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of CUNY, the NYPD, City of New York and their respective

policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL.

110.    Plaintiff asserts that the personnel files, records and disciplinary histories of the individual defendants will reveal a history of Constitutional violations indicative of the governmental or institutional defendants' knowledge that the individual defendants were unfit for employment as CUNY employees, NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

111.    Said personnel files, records and disciplinary histories will conclusively show that CUNY, the City and the NYPD were fully aware of the individual defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that CUNY, the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to CUNY's and the City's tacit approval of such misconduct or their deliberate indifference towards the civil rights of those who may interact with its employees, including BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL.

112.    Defendant PORTILLO, in particular, has been individually named as defendant in *at least* four (4) different lawsuits within the last the ten (10) years, with each accusing him of violating the civil rights of those individuals he has sworn to protect. Since he began his employment with the NYPD in September of 2011, Defendant PORTILLO has also been the subject of nine (9) complaints filed with the Civilian Complaint Review Board, one of which was substantiated with discipline charges being recommended. Notably, the substantiated complaint against defendant PORTILLO did *not* result in *any* disciplinary action against him, despite such action being recommended by the CCRB upon the substantiation of the relevant complaint. As such, the NYPD failed to take *any* corrective action or initiate disciplinary measures against defendant PORTILLO, whatsoever. Instead, the NYPD rewarded Defendant PORTILLO'S *substantiated* gross misconduct, including his use of excessive force, by promoting him to the rank of Lieutenant and increasing his salary on numerous occasions.

113.    CUNY, the NYPD and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

114.    The aforementioned acts of defendants, including the BAIDYA, BOUDREAU, THORNTON, REINA, RHINEHART, BARRY, LEDERHANDLER, LAPERUTA, GOPPY, MORENA, MOZELESKI, COVELESKI, OCCHIOGROSSO, RODRIGUEZ, THOMPSON, PORTILLO, TROTTER, SUAREZ, MOREAU and HALL directly or proximately resulted in the deprivation or violation of Mr. Ndemenoh's civil rights, as guaranteed and protected by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, the constitution of the State of New York, as well as the laws of the City and State of New York.

115.    As direct or proximate results of said acts, Mr. Ndemenoh was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, pain and suffering, physical injury, discomfort, as well as severe and permanent emotional distress, fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and debilitating anxiety.

**Factual Allegations Incorporated by Reference Herein**

116.    Mr. Ndemenoh hereby incorporates by reference herein, the factual allegations, as set forth within the originally filed complaint (ECF Doc. No. 1 at pp. 5-8*) and the amended complaint (ECF Doc. No. 4 at pp. 2-9*).

**FIRST CAUSE OF ACTION**
Protected Speech or Activity Retaliation Claim Under
New York State Law

117.    Plaintiff re-alleges and re-avers Paragraph 1 through 116 of this Complaint, as if fully set forth herein.

118.    Plaintiff engaged in speech and activities that were protected by Article I, section 8, of the constitution of the State of New York.

119.    Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

120.    Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

121.    Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or

activities or by chilling his desire to further participate or engage in such protected speech or activities.

122.     Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by Article I, section 8, of the constitution of the State of New York, was violated by defendants.

123.     Defendants, CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings, under the doctrine of *respondeat superior*.

124.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>**SECOND CAUSE OF ACTION**</u>
First Amendment Retaliation Claim Under
42 U.S.C. § 1983 Against Individual Defendants

125.     Plaintiff re-alleges and re-avers Paragraph 1 through 124 of this Complaint, as if fully set forth herein.

126.     Plaintiff engaged in speech and activities that were protected by the First Amendment to the Constitution of the United States.

127.     Defendants committed impermissible or unlawful actions against Plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

128.     Defendants' retaliatory actions against Plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

129.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities, or by chilling his desire to further participate or engage in such protected speech or activities.

130.    Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by the First Amendment to the Constitution of the United States, was violated by defendants.

131.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

132.    Plaintiff re-alleges and re-avers Paragraph 1 through 131 of this Complaint, as if fully set forth herein.

133.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

134.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

135.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

136.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

137.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, section 12, of the constitution of the State of New York.

138.    Defendants CUNY or City, as employers of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

139.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

140.    Plaintiff re-alleges and re-avers Paragraph 1 through 139 of this Complaint, as if fully set forth herein.

141.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

142.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

143.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

144.    The unreasonable searches and seizures to Plaintiff's person and property were not otherwise privileged.

145.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the Constitution of the United States.

146.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

147.    Plaintiff re-alleges and re-avers Paragraph 1 through 146 of this Complaint, as if fully set forth herein.

148.    Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

149.    Plaintiff was conscious of his confinement.

150.    Plaintiff did not consent to his confinement.

151.    Plaintiff's arrest and false imprisonment was not otherwise privileged.

152.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

153.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

154.    Plaintiff re-alleges and re-avers Paragraph 1 through 150 of this Complaint, as if fully set forth herein.

155.    The Defendants violated the Fourth and Fourteenth Amendments to the Constitution of the United States by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

156.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

157.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

158.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Assault & Battery Under
New York State Law

159.    Plaintiff re-alleges and re-avers Paragraph 1 through 158 of this Complaint, as if fully set forth herein.

160.    At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful or offensive touching.

161.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent or justification.

162.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

163.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

164.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

### EIGHTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

165.    Plaintiff re-alleges and re-avers Paragraph 1 through 164 of this Complaint, as if fully set forth herein.

166.    The Defendants violated Plaintiff's rights, under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

167.    Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent.

168.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

### NINTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

169.    Plaintiff re-alleges and re-avers Paragraphs 1 through 168 of this Complaint, as if fully set forth herein.

170.   Defendants initiated the prosecutions against Plaintiff.

171.   Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecutions would succeed.

172.   Defendants acted with malice, which, in the absence of probable cause, may be inferred.

173.   The prosecutions were terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed on the merits after confirming Plaintiff's innocence.

174.   Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

175.   Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

176.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### <u>TENTH CAUSE OF ACTION</u>
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

177.   Plaintiff re-alleges and re-avers Paragraphs 1 through 176 of this Complaint, as if fully set forth herein.

178.   Defendants initiated the prosecutions against Plaintiff.

179.   Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecutions would succeed.

180.   Defendants acted with malice, which, in the absence of probable cause, may be inferred.

181.   The prosecutions were terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed on the merits after Plaintiff's innocence was confirmed.

182.    Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by causing Plaintiff to return to criminal court and to subject to the conditions of his release on his own recognizance.

183.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
### Malicious Abuse of Process Under
### New York State Law

184.    Plaintiff re-alleges and re-avers Paragraph 1 through 183 of this Complaint, as if fully set forth herein.

185.    Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

186.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

187.    Defendants intended to inflict substantial harm upon Plaintiff.

188.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

189.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

190.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

191.     Plaintiff re-alleges and re-avers Paragraph 1 through 190 of this Complaint, as if fully set

forth herein.

192.     Defendants arrested, detained and caused a criminal prosecution to be initiated against

Plaintiff to compel the compliance or forbearance of some act.

193.     Defendants had no excuse or justification to forcibly detain and initiate a prosecution

against Plaintiff, especially with the absence of any cognizable probable cause.

194.     Defendants intended to inflict substantial harm upon Plaintiff.

195.     Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's

criminal prosecution.

196.     Defendants' actions deprived Plaintiff of his constitutional rights to free from illegal

searches and seizures and to not be deprived of his liberty without the due process of law.

197.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Denial of Rights to Due Process & Fair Trial Under
New York State Law

198.     Plaintiff re-alleges and re-avers Paragraphs 1 through 197 of this Complaint, as if fully set

forth herein.

199.     Defendants fabricated false evidence to be used against Plaintiff that was likely to influence

a jury's decision and forwarded said false information to prosecutors.

200.     Defendants' actions deprived Plaintiff of his rights to Due Process and to a fair trial and

caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

201.    Accordingly, defendants violated Plaintiff's rights to Due Process and to a fair trial, pursuant to Article I, sections 1, 2 and 6 of the constitution of the State of New York, as well Article II, section 12, of the New York Civil Rights Law.

202.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

203.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Denial of Rights to Due Process & Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

204.    Plaintiff re-alleges and re-avers Paragraphs 1 through 203 of this Complaint, as if fully set forth herein.

205.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to prosecutors.

206.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

207.    Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

208.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Violation of Victims of Violent Crime Protection Act under
New York City Law

209.    The above paragraphs are here incorporated by reference as though fully set forth herein.

210.    Defendants' acts or series of acts constituted a misdemeanor or felony against plaintiff, as

defined in state or federal law which presented a serious risk of physical injury to plaintiff, whether or not such acts have actually resulted in criminal charges, prosecution or conviction.

211.    Accordingly, defendants committed a crime of violence against plaintiff and violated plaintiff's rights, pursuant to section 10-403 of the Administrative Code of the City of New York.

212.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

213.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws Under
New York State law

214.    The above paragraphs are here incorporated by reference as though fully set forth herein.

215.    Plaintiff, as a Black male immigrant from Nigeria, where he is a citizen, is a member of a racial minority and protected class.

216.    Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation.

217.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

218.    Defendants' discriminatory treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

219.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

220.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

221.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

222.    Accordingly, defendants violated plaintiff's rights, pursuant to article I, section 11, of the constitution of the State of New York, article VII, section 79-N, of the New York Civil Rights Law and section 296, paragraph 13, of the New York Executive Law.

223.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

224.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Biased Based Profiling Under
New York City Law

225.    The above paragraphs are here incorporated by reference as though fully set forth herein.

226.    Defendants impermissibly relied upon Plaintiff's actual or perceived race, color, national origin, ancestry, citizenship status, gender, religion, religious practice, age, disability or sexual orientation, as the determinative factor in initiating law enforcement action against Plaintiff, rather than Plaintiff's behavior or other information or circumstances that would link Plaintiff to suspected unlawful activity.

227.    Accordingly, defendants violated plaintiff's rights, pursuant to section 14-151 of the Administrative Code of the City of New York.

228.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

229.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981, Title VI & 1983 Against All Defendants

230.    The above paragraphs are here incorporated by reference as though fully set forth herein.

231.    Plaintiff, as an African American male, is a member of a racial minority and protected class.

232.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity.

233.    Defendants engaged in the selective treatment of Plaintiff in comparison to others similarly situated.

234.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

235.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

236.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

237.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

238.    Accordingly, defendants violated plaintiff's rights, under the Fourteenth Amendment.

239.    Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

240.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights & Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 & 1986 Against All Defendants

241.    The above paragraphs are here incorporated by reference as though fully set forth herein.

242.     Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

243.     Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

244.     As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

245.     Defendants' conspiracy was motivated by a desire to deprive Plaintiff of his civil rights or because of some racial, otherwise class-based, invidious or discriminatory animus.

246.     The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

247.     Accordingly, defendants violated Plaintiff's rights, pursuant to the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

248.     Defendants CUNY or City, as employers of the individual Defendants, are responsible for their wrongdoings under the doctrine of *respondeat superior*.

249.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTIETH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

250.     The above paragraphs are here incorporated by reference as though fully set forth herein.

251.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

252.    Defendants CUNY or City, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

253.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-FIRST CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

254.    The above paragraphs are here incorporated by reference as though fully set forth herein.

255.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

256.    Accordingly, the Defendants who failed to intervene violated the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

257.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-SECOND CAUSE OF ACTION
Negligent Hiring, Training, Retention & Supervision Under
New York State Law

258.    The above paragraphs are here incorporated by reference as though fully set forth.

259.    Defendants CUNY or City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

260.    Defendants CUNY or City breached those duties of care.

261.    Defendants CUNY or City placed defendants in a position where they could inflict foreseeable harm.

262.    Defendants CUNY or City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

263.    Defendants CUNY of City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

264.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-THIRD CAUSE OF ACTION
Governmental "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendants CUNY or City

265.    The above paragraphs are here incorporated by reference as though fully set forth.

266.    Defendants CUNY or City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

267.    The individually named defendants have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker of defendants CUNY or City must have been aware of.

268.    Defendants CUNY or City and their respective policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate

indifference toward the rights of those who may come into contact with defendants' employees, including the individually named defendants herein.

269.    The individual defendants herein engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by Defendants CUNY or City and their policymakers toward the rights of individuals, who may come into contact with defendants' employees.

270.    The repeated refusal or failure by Defendants CUNY or City to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

271.    The misconduct of Defendants CUNY or City directly or proximately caused the aforementioned violations of Plaintiff's civil rights, as guaranteed and protected by the Constitution of the United States.

272.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

    **WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988, the Administrative Code of the City of New York and the New York Civil Rights and Executive Laws; and

e)      Granting such other and further relief, as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  Bayside, New York
        September 7, 2021

Respectfully submitted,

## SIM & DEPAOLA, LLP

*Attorneys-at-Law*
42-40 Bell Boulevard – Suite 405
Bayside, New York 11361
Telephone: (718) 281-0400
Facsimile:  (718) 631-2700

By: _____
       Samuel C. DePaola, Esq.
       Bar Number: SD0622
       *Attorney for Mr. Ndemenoh*
       sdepaola@simdepaola.com