USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/19/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BASSEY B. NDEMENOH,

                              Plaintiff,

                    v.                                      No. 20-cv-4492 (RA)

VINCENT BOUDREAU, WILLIAM C.                                OPINION & ORDER
THOMPSON, ANTHONY LAPERUTA,
WENDY THORNTON, GEORGE
RHINEHART, and TANNI BAIDYA,

                              Defendants.

---

RONNIE ABRAMS, United States District Judge:

        Plaintiff Bassey Ndemenoh, a former student at the City University of New York

("CUNY"), brought this action against multiple CUNY employees—Vincent Boudreau, William

Thompson, Anthony Laperuta, Wendy Thornton, George Rhinehart, and Tanni Baidya—in their

individual and official capacities, for alleged violations of his civil rights stemming from two

arrests, as well as the criminal proceedings which followed them.  In the main, Plaintiff alleges

that Defendants, acting under color of state law, caused him to be twice unlawfully detained,

arrested, and prosecuted after he was falsely accused of sending emails threatening to kill or

otherwise harm a research assistant (Defendant Baidya), a CUNY professor, and their families.

        Now before the Court is Defendants' motion to dismiss.  For the reasons which follow, the

Court concludes that Plaintiff's claims are timely by way of the Governor's executive orders

tolling the applicable statute of limitations during the COVID-19 Pandemic, although the

Complaint fails to state claims upon which relief could be granted against Defendants Boudreau,

Thornton, and Thompson.  The Complaint does, however, allege facts stating claims for false arrest

and malicious prosecution against Defendant Baidya—who Plaintiff plausibly asserts fraudulently accused him of sending the threatening messages after writing and sending them herself—for her role in both arrests, and against Defendants Laperuta and Rhinehart for their role in Plaintiff's second arrest. Accordingly, and for the additional reasons set forth below, the motion is denied with respect to those claims (1) against Baidya in her individual capacity related to both arrests, (2) against Laperuta in his individual capacity related to the second arrest, and (3) against Rhinehart in his official and individual capacities related to the second arrest. The motion is otherwise granted in its entirety, albeit without prejudice.

## BACKGROUND

The following facts are taken from the Second Amended Complaint (the "SAC" or "Complaint"), and are assumed to be true for purposes of the present motion. *See Stadnick v. Vinint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

While a student at CUNY, Plaintiff signed up to participate in a research study in the Psychology Department, scheduled for November 28, 2016. *See* SAC ¶ 17. According to Plaintiff, several days before the study was set to begin, on November 25, a research assistant, Tanni Baidya, informed him that his participation in the study was being cancelled because he exceeded the required age limit. *Id*. ¶¶ 18–23. Plaintiff responded, explaining to Baidya that he was upset about the last-minute cancellation notice, that he believed he qualified to participate in the study, and that he intended to file a formal complaint with Professor Robert Melara, the supervising psychology professor, and the Dean of City College because he was being discriminated against on the basis of his race, national origin, ethnicity, citizenship status, or age. *Id*. ¶ 22. In an apparent about-face, Baidya then clarified later that same day that Plaintiff could participate in the study after all, and that he would receive the educational credits initially promised for doing so. *Id*.

2

Two days later, at 4:06 a.m. on November 27, the situation allegedly took a disturbing turn. Baidya allegedly sent a message from an email account she created bearing Plaintiff's full name— basseyndemenoh@gmail.com—threatening both Professor Melara and Baidya herself.  *Id*. ¶ 25. The email used extreme profanity, referred to Dr. Melara as "disgusting," and concluded by saying: "I hope all of you die and go to jail.  I will come and destroy all your lives.  Bassey." *Id*.  A second email Baidya allegedly sent to herself from the same account at 8:35 a.m. contained similar "profanity-laced threats to seriously injure, maim and even kill" Baidya, and was signed "Bassey Ndemenoh." *Id*. ¶ 26.

Plaintiff asserts that the morning of the study, November 28, Defendant Juana Reina informed him by letter that City College Public Safety had received a report that Plaintiff had "threatened to kill Prof. Robert Melara and a research associate in the psychology department." *Id*. ¶ 27.  The letter further advised Plaintiff that he was being temporary suspended, effective immediately, until such time as a hearing could be scheduled to determine the appropriate disciplinary course.  *Id*. ¶ 28.  At 10:00 a.m., Plaintiff was then approached by Defendant Anthony Laperuta, the City College Assistant Director of Public Safety and Director of Investigations, and several City College campus safety officers, who informed him that he needed to accompany them to discuss an important matter.  *Id*. ¶¶ 29–31.  Plaintiff was handcuffed, detained, and searched, and his cell phone and laptop were confiscated.  *Id*. ¶¶ 32–36.  Laperuta allegedly refused to investigate Plaintiff's claims of innocence, *id*. ¶¶ 41–42, and Plaintiff was transferred to the 26th Precinct of the New York City Police Department ("NYPD"), which took custody of him prior to his eventual arraignment where he was charged with Aggravated Harassment in the Second Degree, a Class A misdemeanor.  *Id.* ¶¶ 43–45; *see* N.Y. Penal Law § 240.30(1)(a).

Plaintiff maintained his innocence, and the next day informed Defendants George

Rhinehart and Wendy Thornton, as well as other CUNY employees, that he did not send the threatening emails and that he was accordingly appealing his campus suspension.  *Id*. ¶ 48.  After a meeting with Rhinehart on November 30, the matter was referred to the Student Faculty Disciplinary Committee for a hearing scheduled for December 9, 2016.  *Id*. ¶¶ 49–50.  That hearing, however, was cancelled on December 7 after Rhinehart informed Plaintiff that his professors had received an email informing them that Plaintiff was being readmitted to their courses.  *Id*. ¶¶ 51–52.  Plaintiff was told that he remained prohibited from entering the Psychology Department research area, and that he could be rearrested if he failed to comply.  *Id*. ¶ 53.

In January 2017, Plaintiff informed Rhinehart, Thornton, and Thompson that he had been falsely arrested, maliciously prosecuted, and discriminated against "on the basis of his race, ethnicity, national origin, citizenship status, or age."  *Id*. ¶¶ 54, 57.  He further alleged that he believed his arrest was retaliation for his stated intent to inform the Dean that he had been discriminated against by Baidya when she cancelled his participation in the study.  *Id*. ¶ 60.

On March 26, 2017, NYPD officers then came to Plaintiff's home, where he was arrested once again—this time, for allegedly violating a protective order issued following his November 28, 2016 arrest.  *Id*. ¶¶ 62–68.  Plaintiff alleges that the purported violation was, in fact, due to Baidya again falsely reporting that she had received an additional threatening email from Plaintiff, even though she had in fact written and sent it herself.  *Id*. ¶ 69.  Plaintiff was transferred to Queens County central booking, arraigned, and charged with Criminal Contempt in the Second Degree, Aggravated Harassment in the Second Degree, and Harassment.  *Id*. ¶ 68; *see* N.Y. Penal Law §§ 215.50(1), 240.30(1)(a), 240.26(1).  He was released on his own recognizance after pleading not guilty to the charges.  *Id*. ¶ 70.

The criminal proceedings related to the March 26, 2017 arrest were ultimately terminated

in Plaintiff's favor on May 31, 2017.  *Id.* ¶ 71 (citing Queens County Criminal Court Docket Number CR-011451-17QN).  The criminal proceedings related to Plaintiff's November 28, 2016 arrest were thereafter also dismissed in Plaintiff's favor, and the record sealed on the merits, on June 26, 2017.  *Id.* ¶ 59 (citing New York County Criminal Court Docket Number 2016NY069774).

## PROCEDURAL HISTORY

Plaintiff first brought this action, proceeding *pro se*, on June 11, 2020 against CUNY, Vincent Boudreau, and the Attorney General of New York.  *See* Dkt. 1.  Although Plaintiff did not identify any particular causes of action, Judge Stanton—to whom the case was originally assigned—construed the original Complaint as asserting claims for false arrest, malicious prosecution, and the denial of due process under 42 U.S.C. § 1983, as well as claims under Title VI of the Civil Rights Act of 1964.  *See* Order to Amend, Dkt. 3 at 5.  Judge Stanton *sua sponte* dismissed the Complaint, citing several grounds as the bases for doing so.  *Id.* at 5–12.  First, the Court found that most of Plaintiff's claims were time-barred because they arose outside the applicable three-year statute of limitations applicable to Plaintiff's Section 1983 claims, and that he failed to demonstrate that equitable tolling should apply.  *Id.* at 5–6.  Second, the Court determined that Plaintiff had failed to allege facts establishing each Defendant's direct and personal involvement.  *Id.* at 7–8.  Third, it concluded that the Attorney General was immune from civil suits for damages, and that Plaintiff's claims against CUNY were barred by the Eleventh Amendment.  *Id.* at 8–9.  Finally, the Court found that Plaintiff failed to identify the individuals who allegedly had maliciously prosecuted him.  *Id.* at 9–10.  It granted Plaintiff leave to amend to allege additional facts in order to state malicious prosecution claims, and further required Plaintiff to "explain why his [Section 1983] claims are timely despite the three-year limitations period."  *Id.*

at 12.

Plaintiff filed his First Amended Complaint ("FAC") in September 2020, removing CUNY and the Attorney General as Defendants, and adding Defendants Baidya, Laperuta, Rhinehart, Thornton, and Thompson instead. *See* Dkt. 4. In October 2020, the action was reassigned to the undersigned, *See* Dkts. 5–6, and, in April 2021, Defendants filed a motion to dismiss the FAC premised largely on the deficiencies identified by Judge Stanton's Order to Amend. *See* Dkt. 27.

Following the motion, Plaintiff retained counsel and requested multiple extensions, each of which were granted. *See* Dkts. 31, 33, 35, 38. Following the Court's final extension of the time by which to file an opposition to the motion, *see* Dkt. 41, Plaintiff filed the SAC without seeking leave for doing so, this time naming multiple additional Defendants, including the City of New York and CUNY, as well as asserting additional causes of action, *see* Dkt. 50. The Court permitted the filing of the SAC over Defendants' objections. *See* Dkt. 101 at 1. However, despite having numerous opportunities for doing so, *see* Dkts. 59, 65, 98, Plaintiff failed to properly serve any of the additional Defendants with the SAC. Accordingly, on July 21, 2022, the Court dismissed the new Defendants from this action, albeit without prejudice, given Plaintiff's failure to effectuate service under Federal Rule of Civil Procedure 4(m). *See* Dkt. 101 at 1, 4; Fed. R. Civ. P. 4(m) (providing that, where service is not effected, the court "must dismiss the action without prejudice against that defendant"); *Zappin v. Cohen*, 2016 WL 3034334, at *2 (S.D.N.Y. Jan. 27, 2016) ("[T]he text of Rule 4(m) expressly provides that any dismissal made thereunder must be without prejudice."). The remaining original Defendants then filed the instant motion to dismiss the SAC in November 2022, *see* Dkts. 110, 111, and the motion was fully briefed in February 2023, *see* Dkts. 117, 120.

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35.

**DISCUSSION**

I.      **Plaintiff's Claims are Not Time Barred**

Defendants first argue that many of Plaintiff's claims are time barred, given that the statute of limitations for his claims brought under 42 U.S.C. § 1983 is three years in New York. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (observing that the statute of limitations for Section 1983 claims is found in the "general or residual state statute of limitations for personal injury actions") (cleaned up); N.Y. C.P.L.R. § 214(5) (in New York, that period is three years). Because Plaintiff commenced this action on June 11, 2020, Defendants argue, all claims arising from events occurring prior to June 11, 2017 are time barred. To be sure, Judge Stanton previously appeared to share that view in the Order to Amend issued in August 2020. *See* Dkt. 3 at 5 ("Most

of Plaintiff's claims appear to be time-barred.").

Critically, however, the applicable statute of limitations was tolled in New York for 229 days by a series of executive orders issued by then-Governor Andrew Cuomo during the COVID-19 Pandemic, such that Plaintiffs claims were timely filed. The Supreme Court has established that, in general, courts "refer[] to state law for tolling rules, just as [they] have for the length of statutes of limitations." *Wallace v. Kato*, 549 U.S. 384, 394 (2007). Since Congress did not establish applicable tolling rules for Section 1983 claims and has directed courts to refer to state statutes when no federal law provides a "rule of decision for actions brought under Section 1983," state statutes of limitations and their respective tolling rules are "binding rules of law in most cases." *Bd. of Regents of Univ. of State v. Tomanio*, 446 U.S. 478, 484–85 (1980). As relevant here, on March 20, 2020, Governor Cuomo issued nine successive executive orders tolling all applicable statutes of limitations from March 20, 2020 to November 3, 2020; the order ending the toll took effect on November 4, 2020. *See* Executive Order [A. Cuomo] Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72; 9 NYCRR §§ 8.202.14, 8.202.28, 8.202.38, 8.202.55, 8.202.55.1, 8.202.60, 8.202.67, 8.202.72; *see also Brash v. Richards*, 149 N.Y.S.3d 560, 563 (App. Div. 2021) (holding that Governor Cuomo's executive orders effectively tolled the time limitations contained in New York statutes).

Plaintiff's false arrest,[1] unlawful search and seizure, excessive force, failure to intervene, abuse of process, and First Amendment retaliation claims accrued when Plaintiff learned of the injuries upon which his claims are based: that is, at the time of his arrests on November 28, 2016 and March 26, 2017. *See Pearl*, 296 F.3d at 80 ("Federal law determines when a section 1983

---

[1] The Court need not determine, as Plaintiff argues, whether deferred accrual pursuant to *Heck v. Humphry*, 512 U.S. 477 (1994), and *McDonough v. Smith*, 139 S. Ct. 2149 (2019), applies in this action, given that the false arrest claims are timely regardless of the application of any deferral doctrine.

cause of action accrues . . . ."); *Wallace v. Kato*, 549 U.S. 384, 397 (2007) (claims for false arrest accrue on the date of the arrest); *Riviera v. City of New York*, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (unlawful search and seizure claims accrue on the date of the alleged unlawful search); *Horn v. Politopoulos*, 628 F. App'x 33, 34 (2d Cir. 2015) (claims for excessive force accrue on the date of injury); *Barnes v. City of N.Y.*, 68 F.4th 123, 127 (2d Cir. 2023) (claims for failure to intervene accrue when the failure to intervene occurs); *Steinbergin v. City of N.Y.*, 2022 WL 1231709, at *3 (2d Cir. Apr. 27, 2022) (claims for abuse of process accrue on the date of arrest); *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (First Amendment retaliation claims accrue once plaintiff suffers injury from the retaliatory acts).  Plaintiff's claims for malicious prosecution and the denial of the right to fair trial thereafter accrued on May 31, 2017 and June 26, 2017, upon the conclusive and favorable termination of his underlying criminal proceedings in Queens and New York Counties, respectively.  *See McDonough v. Smith*, 588 U.S. ---, 139 S. Ct. 2149, 2156 (2019) (denial of the right to fair trial claims accrue on the favorable termination of the prosecution); *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (malicious prosecution claims accrue "when the underlying criminal action is conclusively terminated").

Applying the 229-day toll, pursuant to the applicable executive orders, to the three-year statute of limitations, Plaintiff thus could bring his claims based upon the November 28, 2016 and March 26, 2017 arrests up until July 14, 2020 and November 10, 2020, respectively; and Plaintiff could bring his claims based on the terminations of his prosecutions on May 31, 2017 and June 26, 2017 until January 15, 2021 and February 10, 2021, respectively.  Plaintiff commenced this action on June 11, 2020. *See* Dkt. 1.  Accordingly, "after considering the 22[9]-day tolling of the statute of limitations periods imposed by former Governor Andrew Cuomo in light of the COVID-19 pandemic," each of Plaintiff Ndemenoh's claims are timely.  *Jones v. City of Mount Vernon*,

2023 WL 2118026, at *3 (S.D.N.Y. Feb. 17, 2023).

## II.     Many of Plaintiff's Claims Have Nevertheless Been Abandoned

Notwithstanding that they were brought within the applicable limitations period, many of Plaintiff's claims have nevertheless been abandoned.  It is well established that "[f]ederal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss and the plaintiff fails to address in their opposition papers defendant's arguments for dismissing such a claim." *Robinson v. Fischer*, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010); *see also Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss.").  As the Second Circuit recently observed, "in 'counseled' cases, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Farag v. XYZ Two Way Radio Serv., Inc.*, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)).  Merely offering a "conclusory assertion that the complaint ha[s] 'stated a claim for each and every cause of action'" constitutes "failure to meaningfully discuss" the opposing party's arguments supporting a finding of abandonment. *Id.*

Here, Defendants' motion to dismiss argues that there were pleading deficiencies for each one of Plaintiff's twenty-two causes of action.  *See* Mot. at Section VI.  Plaintiff's opposition, however, meaningfully responds only to those arguments regarding his causes of action for false arrest and malicious prosecution.  *See* Opp. at Section IV.  His one-sentence conclusory assertion that he "respectfully relies on the well-pleaded allegations of the SAC" is insufficient to constitute engagement with or a meaningful response to Defendants arguments as to his remaining causes of

action.  *Id.* at 21; *see Farag*, 2023 WL 2770219, at *2.  As a result, Plaintiff's claims for excessive force, discrimination, First Amendment retaliation, failure to intervene, and conspiracy have been abandoned and, thus, are dismissed on that basis.

Defendants' additional argument that Plaintiff abandoned all claims against Defendants Boudreau, Thompson, and Thornton, however, is unpersuasive.  Although the Court concludes that Plaintiff ultimately fails to adequately plead the personal involvement of these Defendants required to survive the present motion to dismiss, *see infra* at 12–13, the standard for finding abandonment of claims is failure to meaningfully respond to arguments raised by a motion to dismiss—not failure to ultimately prevail as against those arguments on the merits.  *See, e.g., Rivera v. Balter Sales Co.*, 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143–144 (E.D.N.Y. 2014) ("[C]ourts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.") (cleaned up).  Here, Plaintiff responds to and sufficiently opposes Defendants' arguments about the Complaint's lack of factual allegations concerning personal involvement of Defendants Boudreau, Thompson, and Thornton.  *See* Opp. at Section III.  Accordingly, those claims were not abandoned.

### III.    Plaintiff States Claims for False Arrest and Malicious Prosecution Against Defendants Laperuta, Rhinehart, and Baidya

Plaintiff's remaining, non-abandoned causes of action are thus for false arrest and malicious prosecution under 42 U.S.C. § 1983, and New York State and City law, against Defendants in both their individual and official capacities.  *See* SAC ¶¶ 11, 145–156, 167–181. For the reasons set forth below, accepting the allegations in the Complaint as true, the following claims survive: those against Defendant Laperuta in his individual capacity related to the March

11

2017 arrest and subsequent proceedings; those against Defendant Rhinehart in his individual and official capacities related to the March 2017 arrest and subsequent proceedings; and those against Defendant Baidya in her individual capacity related to both the November 2016 and March 2017 arrests and subsequent proceedings.  All other claims are dismissed in their entirety.

### A.   Plaintiff Does Not Sufficiently Allege the Personal Involvement of Defendants Boudreau, Thompson, and Thornton

First, Plaintiff fails to state claims for false arrest or malicious prosecution against Defendants Boudreau, Thompson, and Thornton because he does not plead facts creating a plausible inference of their personal involvement in either the November 28, 2016 or March 26, 2017 arrests, or the subsequent proceedings which respectively followed.  It is well established within "this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up).  "[M]ere knowledge of alleged constitutional violations is insufficient to state a claim against a defendant under Section 1983."  *Warren v. Quick*, 2020 WL 7647220, at *3 (S.D.N.Y. Dec. 23, 2020).  As such, "as a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement."  *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (cleaned up).  To allege personal involvement, a plaintiff must plead that a defendant "receiv[ed] and act[ed] on a [plaintiff's] grievance or otherwise review[ed] and respond[ed] to a [plaintiff's] complaint."  *Warren*, 2020 WL 7647220, at *3 (citing *Alvarado*, 22 F. Supp. 3d at 215).

Here, Plaintiff's allegations related to the November 28, 2016 and March 26, 2017 arrests do not personally implicate Defendant Boudreau, Thompson, and Thornton whatsoever.  Rather, Plaintiff alleges only that they "tacitly or expressly approv[ed] or ratif[ied] the Constitutionally violative behavior" at issue by failing to respond to his emails and messages sent regarding the

arrests.  *See* SAC ¶ 54.  He alleges, for instance, that, in January 2017, following the first arrest,

he sent an email advising that he believed "he was unfairly discriminated against and wrongfully

arrested by [CUNY] employees," and that Defendants Boudreau, Thompson, and Thornton failed

to respond.  *See* SAC ¶ 58.  But "mere receipt of a letter or grievance," coupled with the failure to

act, is not enough to sufficiently plead personal involvement. *Warren*, 2020 WL 7647220, at \*4.

Similarly, Plaintiff does not allege any facts—rather than mere conclusory allegations—indicating

personal involvement by Defendants Boudreau, Thompson, and Thornton in the events relating to

the criminal proceedings following his arrests.   Without more, Plaintiff's claims against

Defendants Boudreau, Thompson, and Thornton, as currently pleaded, fail as a matter of law.  *See*

*Leneau v. Ponte*, 2018 WL 566456, at \*15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against

a defendant for lack of personal involvement because "Plaintiff's general allegation that all

defendants were involved in the alleged constitutional violations [did] not rescue the claims

against" a particular defendant).

    **B.**    **Plaintiff Does Not State Claims Against Defendants Laperuta and Rhinehart for the First Arrest, but Does for the Second**

The Court next concludes that Plaintiff fails to state claims for false arrest and malicious

prosecution against Defendants Laperuta and Rhinehart related to the November 2016 arrest,

although he does state claims for those same causes of action against Laperuta and Rhinehart for

their role in the March 2017 arrest.  To state a prima facie case for false arrest under New York

law, a plaintiff must plead that "(1) the defendant intended to confine him, (2) the plaintiff was

conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–135 (2d Cir.

2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).  "To establish a malicious

prosecution claim under New York law, a plaintiff must show [1] that a proceeding was

commenced or continued against him, [2] with malice and without probable cause, and [3] was terminated in his favor." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).[2]

Plaintiff fails to allege facts stating a claim for either false arrest or malicious prosecution as against Defendant Laperuta for the arrest on November 18, 2016 and the proceedings which followed. Accepting the pleadings as true, Laperuta, the arresting officer in November 2016, had probable cause for Plaintiff's arrest and the proceedings that followed—a complete defense to both causes of action as a matter of law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a completed defense to an action for false arrest, whether that action is brought under state law or under § 1983.") (cleaned up); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) ("The existence of probable cause to commence a proceeding is a complete defense to a claim of malicious prosecution."). The Second Circuit has repeatedly held that "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd*, 336 F.3d at 75–76 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). Specifically, "a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim," *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000), "unless the circumstances raise doubt as to the person's veracity," *Pannetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). As the Complaint itself acknowledges, Laperuta arrested Plaintiff in November 2016 based upon facially inculpatory information received from Baidya, the putative victim—namely,

---

[2]    "[T]he elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law," such that analysis for these claims under state and federal law is identical. *Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2d Cir. 2003) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992)).

that Plaintiff had sent threatening emails to her and Professor Melara. SAC ¶ 40. And, at the time

of that arrest, there was no reason for Laperuta to question to the veracity of Baidya's report, which

itself included images of the threatening emails sent from an address facially appearing to be from

Plaintiff—basseyndemeoh@gmail.com—and signed with the name "Bassey Ndemenoh." *See id*.

¶ 26. Accepting those facts as true, Laperuta had probable cause to make the arrest, and Plaintiff

has not stated a claim for false arrest or malicious prosecution against Defendant Laperuta as to

that November 28, 2016 arrest. *See Allen v. Leonard*, 2020 WL 4587752, at *8 (E.D.N.Y. Mar. 3,

2020).

      Similarly, Plaintiff does not allege facts stating a claim for either false arrest or malicious

prosecution against Defendant Rhinehart related to the first arrest because the Complaint alleges

merely that Rhinehart forwarded Baidya's initial complaint to campus safety. This is legally

insufficient to state a claim for either cause of action. "It is well settled under New York law that

civilian complainants will not be held liable for state tort claims, such as false arrest [and malicious

prosecution], 'by merely seeking police assistance or furnishing information to law enforcement

authorities who are then free to exercise their own judgment as to whether an arrest should be

made and criminal charges filed.'" *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 373

n.8 (E.D.N.Y. 2015) (quoting *Levy v. Grandone*, 789 N.Y.S.2d 291, 293 (App. Div. 2005)); *see

also Lupski v. Cnty. of Nassau*, 822 N.Y.S.2d 112, 114 (App. Div. 2006) ("Merely giving false

information to the authorities does not constitute initiation of the proceeding without an additional

allegation or showing that, at the time the information was provided, the defendant knew it to be

false, yet still gave it to the police or District Attorney."). Because Plaintiff does not allege facts

creating a plausible inference that Rhinehart did anything more than forward information to

campus safety, he fails to state claims for false arrest and malicious prosecution against Rhinehart

based on his November 28, 2016 arrest.

Although a closer question, however, the Court concludes that the allegations in the Complaint are sufficient to state claims against Laperuta and Rhinehart related to Plaintiff's second arrest, on March 26, 2017, and the subsequent criminal proceeding against him. For that arrest, Plaintiff alleges that both Laperuta and Rhinehart forwarded Baidya's second complaint to the New York and Queens Counties District Attorneys' Offices after receiving it. *See* SAC ¶ 85. To be sure, as mentioned previously, "the mere furnishing of information to the police will not subject the informant to liability in an action for false arrest [even] when an arrest of an innocent person results from such information." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also Lupski*, 822 N.Y.S.2d at 114 (same for malicious prosecution claim). But, critically, claims for malicious prosecution and false arrest may be established where an individual provides information and—"at the time the information was provided"—"knew it to be false." *Lupski*, 822 N.Y.S.2d at 114.

Here, a plausible inference can be drawn from the pleadings that both Laperuta and Rhinehart had reason to doubt the authenticity of the second set of threats at the time they nevertheless forwarded them to law enforcement. The Complaint alleges, for instance, that, as early as December 7, 2016, Laperuta and Rhinehart had confirmed that Plaintiff was *not* responsible for sending the first set of threatening emails. *See* SAC ¶ 51 (alleging Rhinehart "apologize[d] for the inconvenience and interruption to Plaintiff's studies caused by the allegations made against him, as defendants, including RHINEHART [and] LAPERUTA . . . had confirmed that Mr. Ndemenoh did not send the subject malicious and threatening emails and that Mr. Ndemenoh was innocent of the allegations against him"); *id*. ¶ 52 (alleging Rhinehart and Laperuta emailed Plaintiff's professors requesting that he be "readmitted to their classes"). Moreover, the

Complaint alleges that they knew by January 2017 that Baidya was, in fact, the culprit who sent the initial threats. *See id.* ¶¶ 54–55 ("[A]n investigation conclusively reveal[ed] that the subject emails threatening Defendant BAIDYA and Professor Melara were sent by Defendant BAIDYA via two (2) email accounts she fraudulently created by to [sic] make it appear as if the subject emails were sent from Mr. Ndemenoh.").

Thus, when Laperuta and Rhinehart forwarded Baidya's second set of allegations to the district attorneys' offices, apparently without comment or context, a plausible inference can be drawn that they did so with the intent that proceedings be commenced against Plaintiff. That is, the facts alleged support an inference that Defendants Laperuta and Rhinehart forwarded information that they knew to be false—or at the very least information which they did not take reasonable steps to investigate for authenticity, given their prior experience with Baidya—thereby initiating Plaintiff's second arrest and subsequent prosecution. Alleging facts supporting this inference is enough for Plaintiff to state claims against them. *See Brown v. Nassau Cnty.,* 760 N.Y.S.2d 655, 655 (App. Div. 2003) (civilian complainant can be liable for false arrest and malicious prosecution where "she intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution"); *Kent v. Drought*, 2010 WL 4320334, at *4–5 (W.D.N.Y. Oct. 28, 2010) (finding that Plaintiff stated claims for false arrest and malicious prosecution where he alleged that Defendants gave false allegations in supporting depositions to the police, requested that the police "go after" the plaintiff, and "knowingly made false statements to authorities which led directly to his arrest and the presentation of charges to the grand jury"). Where an "officer becomes aware of circumstances that raise doubts as to the victim's veracity," as here, "the officer's failure to make further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause," *Sherman v. City of N.Y.*, 2019 WL 2164081, at *8 (E.D.N.Y.

May 16, 2019) (cleaned up), and thus form the basis of malicious prosecution and false arrest claims.

To be sure, the pleadings also give rise to an inference that Rhinehart and Laperuta may have passed along Baidya's second claims of being threatened with the assumption that any continuing investigation into her false allegations would be aided by additional evidence of similar continuing behavior.   Allegedly knowing that "an investigation" (conducted by whom, the Complaint does not make clear) had "conclusively reveal[ed] that the subject emails" were "sent by Defendant BAIDYA," *see* SAC ¶¶ 54–55, and having "confirmed that Mr. Ndemenoh did not send the subject malicious and threatening emails," *id*. at ¶ 51, Rhinehart and Laperuta may well have forwarded the second set of purported threats to the district attorneys' offices with the understanding that Baidya—not Plaintiff Ndemenoh—would be further investigated.   (It is notable, for instance, that after forwarding Baidya's second email to prosecutors, Laperuta did not personally arrest Plaintiff on March 26, 2017—suggesting that, unlike in November 2016, he may not have believed Plaintiff to be responsible for sending them.)   Were Defendants able to demonstrate that the messages forwarding the second set of allegations to law enforcement provided such full context, and evinced no intent that proceedings against Plaintiff be commenced, such facts would form the basis of a complete defense to the causes of action against them.  *See Carrillos*, 87 F. Supp. 3d at 373; *Lupski*, 822 N.Y.S.2d at 114.  But, at this early stage of the litigation, accepting the pleadings as true upon a 12(b)(6) motion, and in the absence of proof from the Defendants that their messages to the district attorneys' offices provided this context, the Court finds that Plaintiff has alleged sufficient facts for the causes of action to move forward for the second arrest.

Accordingly, the Court finds that Plaintiff alleges facts sufficient to state claims for false

arrest and malicious prosecution based upon his March 26, 2017 arrest against Defendants Laperuta and Rhinehart.

### C.    The Complaint States Claims for False Arrest and Malicious Prosecution Against Defendant Baidya

Plaintiff's Complaint is on its strongest footing in its claims against the individual allegedly behind the fraudulent threats in the first instance—Defendant Baidya.  For the reasons which follow, the Complaint alleges facts stating a claim for both the false arrest and malicious prosecution causes of action against Baidya.[3]

To reiterate, in order to state a claim for false arrest, a plaintiff must allege that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks*, 316 F.3d at 134–135 (quoting *Broughton*, 37 N.Y.2d at 456).  "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him [by the defendant], with malice and without probable cause, and was terminated in his favor." *Fulton*, 289 F.3d at 195.

---

[3]     As a threshold matter, Defendants' argument that Plaintiff fails to allege that Defendant Baidya was acting under color of state law, as required for a Section 1983 claim, is without merit.  "'Because the United States Constitution regulates only the [g]overnment, not private parties,' a plaintiff asserting a section 1983 claim for constitutional violations must plausibly allege 'that he was injured by either a state actor or a private party acting under color of state law.'"  *Cheruvu v. Healthnow New York, Inc.*, 2023 WL 3443362, at *2 (2d Cir. May 15, 2023) (citing *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) and *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)).

"[S]tate employment … is sufficient to render the defendant a state actor."  *West v. Akins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936, n.18 (1982)); *see also Back v. Hastings-on-Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (same).  The same applies to City employees acting within the scope of their City capacities; the Second Circuit has held, for instance, that "suits against CUNY are equivalent to suits against the State of New York."  *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004), *supplemented on other grounds by*, 90 F. App'x 544 (2d Cir. 2004).  "For purposes of a section 1983 action, a defendant necessarily 'acts under color of state law when he abuses the position given to him by the State."  *Hayut v. State University of New York*, 352 F.3d 733, 744 (2d Cir. 2003) (quoting *West*, 487 U.S. at 50).  Because Baidya is a CUNY employee, Plaintiff can thus bring Section 1983 claims against her. *See Hayut*, 352 F.3d at 744 ("We think it clear that a professor employed at a state university is a state actor.").

As a general matter, civilian defendants are not liable merely for furnishing information to the police, *see King,* 111 F.3d at 257, and "a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff." *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015) (quoting *Lowmack v. Eckerd Corp.*, 757 N.Y.S.2d 406, 408 (App. Div. 2003)). This general rule, however, contains a notable exception where a civilian defendant knowingly makes a false report. In *Moritz v. Town of Warwick*, for instance, a plaintiff was found to have stated a claim for false arrest by alleging that the defendant "knowingly made false statements to the police concerning Plaintiff's harassing behavior" which were "memorialized … in an affidavit to support a criminal charge of stalking against [the defendant]." 2016 WL 3248494, at *4 (S.D.N.Y. June 9, 2016). As Judge Glasser explained in another similar case:

> Contrary to defendants' argument, even where there is no claim that a defendant actually restrained or confined a plaintiff, a claim of false arrest . . . may lie where a plaintiff can show that defendants instigated his arrest, thereby making the police agents in accomplishing their intent to confine the plaintiff. Such an action will lie where the defendants lacked reasonable cause for their belief in the plaintiff's culpability.

*Weintraub v. Bd. of Educ. of City of N.Y.*, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006) (cleaned up); *see also Kent*, 2010 WL 4320334, at *4–5 (W.D.N.Y. Oct. 28, 2010) (finding that the plaintiff stated claims for false arrest and malicious prosecution where he alleged that defendants provided false information the police and requested that the police "go after" the plaintiff). Here, Plaintiff alleges that Defendant Baidya created and sent fraudulent emails purporting to be from Plaintiff threatening to kill and injure Baidya, Professor Melara, and their families, and thereafter filed two false reports based upon the messages, resulting in each of his two arrests and subsequent criminal proceedings. SAC ¶¶ 25–27, 68–70. In support, Baidya supplemented each report with screenshots of the fraudulent threatening emails she drafted, signed with the name "Bassey

Ndemenoh," which arresting officers used to justify their arrests.  SAC ¶¶ 40, 68.  Plaintiff thus sufficiently pleads that Defendant Baidya took an active role in his arrests by "knowingly ma[king] false statements to the police concerning Plaintiff's harassing behavior," *Moritz*, 2016 WL 3248494, at *4, and, thus, his allegations state claims against her for false arrest.

The same allegations also support claims against her for malicious prosecution.  Much like a claim for false arrest, to plead that a civilian defendant initiated the criminal proceeding in order to state a claim for malicious prosecution, a plaintiff must establish that the defendant "affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made." *Lupski*, 822 N.Y.S.2d at 114 (quoting *Mesiti v. Wegman*, 63 N.Y.S.2d 67, 69 (App. Div. 2003)); *see also* 59 N.Y. JUR. 2D, *False Imprisonment and Malicious Prosecution* § 37.  "A defendant may be said to commence or continue a prosecution," for instance, "if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." *Anilao v. Spota*, 774 F. Supp. 2d 457, 505 (E.D.N.Y. 2011), *aff'd*, 27 F.4th 855 (2d Cir. 2022); *see also Brown,* 760 N.Y.S.2d at 655 (civilian complainant can be liable for malicious prosecution if she intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution); *Kent*, 2010 WL 4320334, at *5 (finding plaintiff adequately alleged malicious prosecution because he "alleged that defendants knowingly made false statements to authorities which led directly to his arrest and the presentation of charges to the grand jury").

Defendant Baidya, moreover, cannot hide behind the decisions of the New York and Queens Counties District Attorney's Offices to prosecute when she herself fed false information and allegations to CUNY and the police resulting in Plaintiff's prosecutions.  "Giving information to the police that is known to be false qualifies as the commencement of a prosecution." *TADCO*

*Constr. Corp. v. Dormitory Auth. of New York,* 700 F. Supp. 2d 253, 270 (E.D.N.Y.2010); *see also Zahrey v. Coffey,* 221 F.3d 342, 352 (2d Cir.2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty."). Accordingly, and contrary to Defendants' argument, "the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false."  *Adonis v. Coleman*, 2009 WL 3030197, at *5 (S.D.N.Y. Sept. 23, 2009).

Lastly, Baidya's argument that Plaintiff has not established the "malice" element to state a malicious prosecution claim is also without merit.  To state such a claim, a plaintiff need not prove that the defendant acted with "spite or hatred, but [] only that the defendant [] commenced the criminal proceeding due to a wrong or improper motive, something other than the desire to see the ends of justice served."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996); *see also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("The element of malice implicates an evil or unlawful purpose," and "may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff.").  Here, Plaintiff pleads sufficient facts demonstrating that Defendant Baidya knowingly filed false police reports regarding threatening emails which Baidya, herself, had fraudulently created and sent while posing as Plaintiff, SAC ¶¶ 22, 25–27, 68–70, and thus acted with the requisite mental state.

In sum, the Court concludes that Plaintiff's claims for false arrest and malicious prosecution against Defendant Baidya survive the motion to dismiss.

**D.      Plaintiff Can Bring Claims Against Defendant Rhinehart in His Official Capacity**

Lastly, although the Eleventh Amendment generally bars suits for damages against state employees in their official capacities, because the Complaint also seeks injunctive relief, some official capacity claims may move forward—specifically, those against Defendant Rhinehart—pursuant to the limited *Ex Parte Young* exception, which "allows a suit for injunctive relief challenging the constitutionality of a state official's actions." *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir.2002) (cleaned up); *see generally Ex Parte Young*, 209 U.S. 123, 154 (1908).

The Eleventh Amendment bars suits against States unless the State has waived sovereign immunity or Congress has exercised its authority under the Fourteenth Amendment to abrogate such immunity, neither of which is applicable here. *See Mamot v. Bd. of Regents,* 367 F. App'x. 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court . . . .") (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977)); *Quern v. Jordan*, 440 U.S. 332, 340–42 (1979) (holding that Congress did not intend to override Eleventh Amendment state sovereignty in Section 1983 claims).  The same applies to State officers acting in their official capacities; it is thus well-established that the "Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (establishing that state employees acting in their official capacities are not persons within the meaning of Section 1983 and, thus, are

not subject to suit thereunder).[4]   An exception to this general principle of sovereign immunity

exists, however, under the doctrine articulated by *Ex Parte Young*, which "allows a suit for

injunctive relief challenging the constitutionality of a state official's actions."  *CSX Transp.*, 306

F.3d at 98 (cleaned up).

Defendants argue that, because Plaintiff's Complaint purportedly seeks only money

damages from Defendants, any claims against them in their official capacities should be barred by

the Eleventh Amendment.  They observe that the prayer for relief, for instance, states only:

> Plaintiff respectfully requests judgment against Defendants, jointly and severally,
> as follows:
>
> (a) In favor of Plaintiff in an *amount* to be determined by a jury for each of
>     Plaintiff's causes of action;
> (b) Awarding Plaintiff *punitive damages* in an amount to be determined by a jury;
> (c) Awarding Plaintiff *compensatory damages* in an amount to be determined by a
>     jury;
> (d) Awarding Plaintiff *reasonable attorney's fees and costs*, pursuant to 42 U.S.C.
>     § 1988, the Administrative Code of the City of new York and the New York
>     Civil Rights and Executive Laws; and
> (e) Granting such other and further relief, as this Court may deem just and proper.

SAC at 48–49 (emphasis added).  And Defendants argue that a broad request for "any relief the

Court may deem … proper," *id.*, is insufficient to state claims for injunctive relief—and, indeed,

is a power inherent to the Court that a litigant need not request at all.  *See* Fed. R. Civ. P. 54

("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not

demanded that relief in its pleadings.").

Plaintiff argues, in response, that his Complaint also seeks injunctive relief.  *See* Opp. at

---

[4]      The same standard applies to City employees acting within the scope of their official City capacities; the
Second Circuit has specifically held, for instance, that "suits against CUNY are equivalent to suits against the State of
New York," and are "therefore barred by the Eleventh Amendment," where a Plaintiff seeks only monetary damages.
*Clissuras*, 359 F.3d at 83.  Moreover, the immunity granted by the Eleventh Amendment for violations of federal law
also applies to the claims against Defendants for violations of New York State and City law.  *See Pennhurst State Sch.
& Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their
official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

17.  He asserts that, although not restated in the concluding prayer for relief, his Complaint expressly seeks:

> monetary damages (compensatory and punitive) against defendants, an award of costs and reasonable attorney's fees, with all interest then accrued, *as well as injunctive relief to compel the removal of his suspension from his student record by defendants*, and such other and further relief, as this Court may deem just and proper.

SAC ¶ 5 (emphasis added).

Although somewhat close, given this explicit request, the Court finds that the better reading of the Complaint is that it also seeks limited prospective injunctive relief.  "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up).  Here, such a "straightforward" reading of the Complaint indicates that, beyond seeking money damages, Plaintiff also seeks "injunctive relief to compel the removal of his suspension from his student record."  SAC ¶ 5.  Cases seeking similar injunctive relief have been found to adequately state official capacity claims.  *See Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (finding that a request to expunge a grade from an academic record is subject to *Ex Parte Young* exception to Eleventh Amendment); *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 488–89 (W.D. Va. 2019) ("[P]laintiffs are seeking to expunge and clear their academic records, among other injunctive relief, which numerous courts have noted is a request for prospective relief and not barred by the Eleventh Amendment."); *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1230 (D. Colo. 2014) ("[A] request to expunge an academic record is a request for prospective relief.").

Although Plaintiff may thus state causes of action against Defendants in their official

capacities, *Ex Parte Young* "only authorizes suit against officials with authority to provide the requested relief." *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (collecting cases). In order for the exception to apply where a Complaint seeks injunctive relief, it must therefore be alleged that the "defendant has responsibility for the alleged conduct and the ability to redress the alleged violations." *Shollenberger v. N.Y. State Unified Ct. Sys.*, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (citing *CSX Transp.*, 306 F.3d at 99); *see also Sutton v. Stony Brook Univ.*, 2020 WL 6532937, at *11 (E.D.N.Y. Nov. 5, 2020) (dismissing claim where defendants were no longer employed at Stony Brook University and thus had no authority to reinstate Plaintiff, expunge a violation from her academic record, or award her a degree); *Sutter v. Dibello*, 2019 WL 4195303, at *8 (E.D.N.Y. Aug. 12, 2019), *adopted by*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019) (holding that *Ex Parte Young* exception did not apply because the individual defendant had retired and, as a result would be unable to provide the requested relief).

Here, the only remaining official capacity claims are for false arrest and malicious prosecution against Laperuta and Rhinehart for their involvement in the March 2017 arrest, and for false arrest and malicious prosecution against Baidya for her involvement in both arrests. The Complaint nowhere alleges, however, that either Defendants Baidya or Laperuta would be able to provide Plaintiff's requested injunctive relief—that is, it does not allege that they have the authority or ability to remove a suspension mark from his student record, *see* SAC ¶ 5. Baidya is alleged to be "a [CUNY] research associate" responsible for filling a research study in the psychology department, *id.* ¶ 17, and is nowhere alleged to have any authority to amend a student's academic record or to administer tasks related to expunging a student's suspension. So too, Laperuta is alleged only to have been an arresting campus safety officer during the first arrest, and an Assistant Director of Public Safety. *Id.* ¶ 31, 33. He is also not alleged to have any authority

with respect either to student records or expunging student suspensions from them.

Defendant Rhinehart, however, the Director of Community Standards for City College, is alleged to have met with Plaintiff on November 30, 2016, where he advised Plaintiff "that he was acting on authority and on behalf of Defendant Thornton, the City College Dean of Student Affairs," and then "attempted to coerce Plaintiff to sign various documents in acceptance of a one (1) semester suspension." *Id*. ¶ 49.  Elsewhere, the Complaint alleges that Rhinehart also acted with the Dean's authority when "prohibiting [Plaintiff] from entering the Psychology Department research area" after apparently apologizing to Plaintiff and allowing his readmission to his courses. *Id*. ¶ 53.  From these allegations, a plausible inference may be drawn that Rhinehart, having acted with the Dean's authority in matters related to Plaintiff's suspension in the first place, may be in a position to provide the injunctive relief that the Complaint now seeks.

In sum, a "straightforward" reading of the Complaint indicates that it also "seeks relief properly characterized as prospective" and injunctive in nature, *Verizon Md.*, 535 U.S. at 645, and it alleges facts creating a plausible inference that Defendant Rhinehart "has responsibility for the alleged conduct and the ability to redress the alleged violations" by expunging Plaintiff's suspension from his student record, *Shollenberger*, 2019 WL 2717211, at *5.  Accordingly, the official capacity claims against Rhinehart for his actions related to the March 2017 arrest survive the present motion, while all other official capacity claims are dismissed in their entirety.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied with respect to Plaintiff's causes of action (1) against Defendant Baidya in her individual capacity for false arrest and malicious prosecution, (2) against Defendant Laperuta in his individual capacity for false arrest and malicious prosecution arising from the March 26, 2017 arrest, and (3) against Defendant

Rhinehart in his individual and official capacities for false arrest and malicious prosecution arising from the March 26, 2017 arrest.  The motion is otherwise granted in its entirety.  Because "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013), and "it cannot be concluded that [P]laintiff cannot cure deficiencies in the [C]omplaint," *Johnson v. AFNI, Inc.*, 2023 WL 2970919, *3 (S.D.N.Y. Apr. 15, 2023), however, the Court grants dismissal without prejudice.  Plaintiff may file a further amended Complaint within thirty (30) days, provided he has a good faith basis for doing so.[5]

No later than October 3, 2023, the parties shall file a joint letter proposing next steps in this action, including whether Plaintiff intends to further amend the pleadings.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 110.

SO ORDERED.

Dated:    September 19, 2023
          New York, New York

                                             Hon. Ronnie Abrams
                                             United States District Judge

---

[5]     The Court previously dismissed certain additional Defendants named in the SAC from this action given Plaintiff's repeated failure to effect proper service, albeit "without prejudice," pursuant to the demands of Rule 4(m).  Dkt. 101 at 1; *see* Fed. R. Civ. P. 4(m) (providing that, where service is not effected, the court "must dismiss the action without prejudice against that defendant"); *Zappin*, 2016 WL 3034334, at *2 ("[T]he text of Rule 4(m) expressly provides that any dismissal made thereunder must be without prejudice.").  As a practical matter, however, the claims against those Defendants are likely now time-barred. *See supra* at 9 (indicating that the latest any of the claims could have been brought, even accounting for the Governor's tolling orders, was February 10, 2021).  Accordingly, while Plaintiff may amend his present claims against the remaining Defendants addressed in this opinion, efforts to bring causes of action against additional named parties in any Third Amended Complaint will face a steep hurdle in overcoming any arguments related to the applicable statute of limitations.