UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BASSEY B. NDEMENOH,                                   :
                                                      :          20 Civ. 4492 (GS)
                                    Plaintiff,        :
                                                      :          OPINION AND ORDER
                                                      :
            - against -                               :
                                                      :
ANTHONY LAPERUTA, GEORGE                              :
RHINEHART, and TANNI BAIDYA,                          :
                                                      :
                                    Defendants.       :
------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

In 2016 and again in 2017, Plaintiff Bassey Ndemenoh ("Plaintiff" or

"Ndemenoh"), then a student at the City University of New York ("CUNY"), was

arrested and accused of sending threatening and harassing emails to a CUNY

professor and his research assistant, Defendant Tanni Baidya ("Baidya"). The

charges were subsequently dismissed. Plaintiff brought this action in 2020,

claiming that Baidya contrived to frame him by creating a fake email account to

make it appear that the emails came from him. He asserts claims for false arrest

and malicious prosecution under 42 U.S.C. § 1983 and New York State law against

Baidya and two CUNY officials, Defendants Anthony Laperuta ("Laperuta") and

George Rhinehart ("Rhinehart") (together with Baidya, "Defendants").

Five years of litigation and a full opportunity for discovery have somehow

managed to shed no further light on the central question of who sent the offending

emails that gave rise to the criminal charges against Plaintiff and this lawsuit. All

three Defendants now move for summary judgment. (Dkt. Nos. 185–86). Because it

is Plaintiff's burden to adduce admissible evidence to prove his allegations, and he has completely failed to meet that burden, Defendants' motions for summary judgment are **GRANTED**.

## BACKGROUND

### A. Factual Background[1]

Plaintiff Ndemenoh attended the City College of New York within CUNY and graduated with a B.S. in Psychology in 2018.  (Dkt. No. 185-16 ("L&R 56.1") ¶ 1; Dkt. No. 186 at 3–6 ("Baidya 56.1")).  During the relevant time period, Defendant Laperuta was the Campus Security Assistant Director of CUNY (Dkt. No. 185-1 ("Laperuta Aff.") ¶ 3); Defendant Rhinehart was the Director of Community Standards at CUNY (Dkt. No. 185-2 ("Rhinehart Aff.") ¶ 3); and Defendant Baidya was a research assistant to Dr. Robert Melara, a CUNY professor in the Psychology Department (Dkt. No. 187 ("Baidya Decl.") ¶ 1).

### 1. Ndemenoh's November 28, 2016 Arrest

While a student at CUNY, Ndemenoh signed up to participate in a research

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 statements, deposition testimony, affidavits, and exhibits submitted with their motions, "and are not in dispute except where noted."  *Savino v. Town of Se.*, 983 F. Supp. 2d 293, 296 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 15 (2d Cir. 2014).  The Court "'will not consider assertions for which no citations to [the] record are provided[,] that are merely legal arguments, . . . or [that are] directly contradicted by or not patent from evidence in the record.'"  *Jiang v. Corpuz*, No. 19 Civ. 5664 (RPK), 2022 WL 4539425, at *1 (E.D.N.Y. Sept. 28, 2022) (quoting *Sanders v. City of New York*, No. 16 Civ. 6526 (CBA) (SJB), 2021 WL 4395219, at *3 n.8 (E.D.N.Y. June 15, 2021), *R&R adopted*, No. 2021 WL 4350487 (E.D.N.Y. Sept. 24, 2021)); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) ("'[W]here the record does not support the assertions in a Local 56.1 statement, those assertions [are] disregarded and the record reviewed independently.'" (quoting *Holtz v. Rockefeller & Co.*, Inc., 258 F.3d 62, 74 (2d Cir. 2001))).  Although no party points this out, Baidya's 56.1 statement does not provide a single citation to the record.  (*See* Dkt. No. 186 at 3–6).  Nonetheless, where Baidya's 56.1 statement is consistent with the record and undisputed, the Court includes citations to her statement.

study in the Psychology Department set to begin on November 28, 2016. (L&R 56.1 ¶ 4). The study was being conducted by Dr. Melara and involved people's ability to distinguish high-pitched and low-pitched frequencies. (L&R 56.1 ¶ 8; Baidya Decl. ¶ 1). Participants received college credit for their participation. (Dkt. No. 193-1 ("P. Aff.") ¶ 1). On or about November 25, 2016, a few days before the study began, Baidya called Ndemenoh to confirm his participation in the study. (L&R 56.1 ¶ 4; P. Aff. ¶ 4; Dkt. No. 185 Ex. J ("P. Dep.") 17:15–24). Soon after, however, Ndemenoh received an email cancelling his participation. (L&R 56.1 ¶ 5; P. Dep. 18:2–6; P. Aff. ¶ 5).

On November 26, 2016, Ndemenoh emailed Baidya for an explanation of the cancellation, and Baidya informed him that he had been disqualified from the study because he exceeded the required age limit. (L&R 56.1 ¶ 6–7; P. Dep. 18:23–25, 19:17–24; Baidya Decl. ¶¶ 5–7). In her affidavit, Baidya states that the study was limited to participants who were 18 to 35 and that Ndemenoh was initially deemed ineligible because he "refused to state his age[.]" (Baidya Decl. ¶¶ 2, 5).

Ndemenoh responded to Baidya's email by informing her that he believed he qualified for the study and intended to file a formal complaint with Dr. Melara as he felt his exclusion from the study was improper and discriminatory. (L&R 56.1 ¶ 8–9; P. Dep. 19:25–20:4; Baidya Decl. ¶ 7; P. Aff. ¶ 8). Baidya then agreed to admit Ndemenoh to the study, so he ultimately did not file a complaint with Dr. Melara.[2] (L&R 56.1 ¶ 7–8; P. Dep. 20:5–20).

---

[2] Baidya states in her affidavit that as Dr. Melara's research assistant, she did not "set the age limits or any other eligibility requirements of the study" and "did not control the study or decide whom to

On November 27, 2016, disturbing and threatening emails were sent to Dr. Melara and Baidya from the email account basseyndemenoh@gmail.com.[3]  (L&R 56.1 ¶ 10–11; Baidya 56.1 ¶¶ 3–4; P. Aff. 10–12).  According to Plaintiff, the email to Dr. Melara read: "Fuck you Dr. Melara. You are a disgusting piece of shit you dumb motherfucker. I hope all of you die and go to jail. I will come and destroy all of your lives. Bassey."  (P. Aff. ¶ 11).  The email sent to Baidya included similarly threatening and vulgar language, including "I will rip off your flesh and stab you a million pieces. No one will find your body. . . . Fuck you, you stupid bitch. . . . This is discriminatory, I will not let go of that."  (Dkt. No. 193-2 at 4–5 ("2016 Crim. Compl."); *see also* P. Aff. ¶ 12).

As a result of the emails, Ndemenoh was detained by CUNY Public Safety at the direction of Laperuta, and his laptop and cellphone were confiscated.  (P. Aff. ¶ 15; Laperuta Aff. ¶¶ 5–6).  He was arrested and charged with aggravated harassment in the second degree on November 28, 2016 in New York County Criminal Court, based on a misdemeanor complaint sworn out by a CUNY public safety officer.  (L&R 56.1 ¶ 13; P. Aff. ¶ 15; P. Dep. 30:23–31:8; 2016 Crim. Compl. at 4–5; Laperuta Aff. ¶ 6–7).

Ndemenoh asserts he was falsely accused and he has never owned, operated, or controlled any email account with the address of basseyndemenoh@gmail.com.

---

admit to it."  (Baidya Decl. ¶¶ 3–4).  Baidya further states that she "offer[s] this declaration to correct a misstatement . . . that [she] denied Mr. Ndemenoh's request to participate in the study but then reversed that position and admitted him to the study."  (*Id*. ¶ 7).  In other words, Baidya suggests that she was not responsible for deciding to admit Ndemenoh to the study.  To the extent this is a disputed issue of fact, it is not material to the outcome of Defendants' motions.

[3] No party has provided the Court with a copy of these emails.

(P. Aff. ¶ 13).  Instead, he claims that the emails to Dr. Melara and Baidya on November 27, 2016 were sent from a "fake email account" created by Baidya and that she sent the emails in order to "frame" him.  (*Id*, ¶¶ 10, 12).

### 2. Ndemenoh's Suspension from CUNY

Due to Baidya's allegations, Ndemenoh also was suspended from CUNY.  (P. Aff. ¶ 14; Rhinehart Aff. ¶ 6; Dkt. No. 185-14 at 6).  Ndemenoh appealed his suspension to CUNY on November 29, 2016.  (P. Aff. ¶ 17).  That same day, Ndemenoh met with Rhinehart and "informed him about the fake email account, and told him that Mr. Laperuta had confiscated [his] laptop and cell phone which" Ndemenoh believed demonstrated that he "couldn't have sent the emails to Defendant Baidya."  (*Id*. ¶ 17).  A Student Faculty Disciplinary Committee hearing was set for December 9, 2016, but never occurred.  (*Id*. ¶¶ 19–20).

Plaintiff asserts that he met with Rhinehart again on December 7, 2016, at which point "Rhinehart apologized to [Plaintiff] . . . and told [him] that he knew that [Plaintiff] had not sent the emails."  (*Id*. ¶ 20).  On December 8, 2016, Rhinehart sent an email to Ndemenoh's professors notifying them that Ndemenoh had been unable to attend class the prior week "[d]ue to his involvement in a Student Affairs matter" and requesting that they "allow him to make up any work, receive any missed assignments and take any tests or exams that he missed during his absence."  (Dkt. No. 185-14 at 9).

Ndemenoh states that he nonetheless remained "forbidden from entering the CUNY psychology department research area" and that Rhinehart "threatened that

[Plaintiff] would be arrested if [he] didn't comply." (P. Aff. ¶ 20). Ndemenoh also states that "Rhinehart and Laperuta never informed the police or prosecutors that they knew [he] never sent the emails . . . ." (*Id*. ¶ 21).

### 3. Ndemenoh's March 26, 2017 Arrest

On March 26, 2017, Ndemenoh was arrested a second time, this time by a New York Police Department ("NYPD") officer from a precinct in Queens, for allegedly violating a protective order issued by the Manhattan Criminal Court on behalf of Baidya following his first arrest. (Dkt. No. 193-2 at 1–3 ("2017 Crim. Compl.")). The criminal complaint alleges that on March 10, 2017, Ndemenoh sent an email to Baidya threatening to "destroy [her] piece by piece and everything in [her] life until there is nothing left" and making other threatening statements. (*Id*. at 2). Plaintiff was charged in Queens County Criminal Court with criminal contempt in the second degree, aggravated harassment in the second degree, and harassment in the second degree. (*Id*. at 1–2).

Ndemenoh asserts that this second arrest was the result of a complaint made by "Defendants" to the police after he emailed Rhinehart and Laperuta demanding that they overturn his suspension given that "Rhinehart admitted he knew [Plaintiff] hadn't sent the emails to Ms. Baidya . . . ." (P. Aff. ¶¶ 22–23). Ndemenoh asserts that the complaint to the police was "retaliation" by Rhinehart and Laperuta. (*Id*. ¶ 23). However, the criminal complaint is sworn out by an NYPD officer who states that he was provided information about the threatening March 10, 2017 email "by the complainant, Tanni Baidya." (2017 Crim. Compl. at 1–2).

The NYPD officer does not mention receiving any information from anyone at CUNY or indicate that anyone from CUNY played a role in reporting the matter.

### 4. Dismissal of the Criminal Charges

Both sets of charges against Ndemenoh were ultimately dropped, and both cases were sealed.  (P. Aff. ¶ 16; P. Dep. 27:16–21, 35:12–14; Rhinehart Aff. ¶ 7).  The Queens Criminal Court case was dismissed on May 31, 2017.  (Dkt. No. 186 at 32–33).[4]  The Manhattan Criminal Court case was dismissed on June 26, 2017.  (P. Aff. ¶ 16).

According to Ndemenoh, the criminal charges against him were dismissed because the New York County District Attorney's Office ("DANY") "conducted an investigation and learned that Ms. Baidya herself was the one who concocted the emails that resulted in my false arrest and malicious prosecution."  (P. Aff. ¶ 24).  Ndemenoh's sole basis for asserting that Baidya sent the threatening emails is that his Legal Aid attorney handling his Manhattan criminal case, Lindsay Christine Adams, informed him that "she and then Manhattan DA Cyrus Vance . . . obtain[ed] subpoenas records and [] found that the Gmail account [basseyndemenoh@gmail.com] was linked to Tanni Baidya's IP address."  (P. Dep. 26:4–27:13, 34:18–25, 37:7–25, 103:8–15; Dkt. No. 193-4 ("P. Resp. Baidya 56.1") ¶¶ 14–15).  Ndemenoh states that Adams informed him of this "shortly before the case was dismissed in 2017 . . . in the Manhattan District Court."  (P. Dep. 27:14–21).

---

[4] Defendants state that the Queens prosecution was dismissed "for lack of jurisdiction."  (Dkt. No. 185-17 ("L&R Br.") ¶ 9; Dkt. No. 186 at 7–21 ("Baidya Br.") at 4–5 n.1).  A page attached to Baidya's brief appears to read "dismissed lack of jurisdiction," although the handwriting is almost illegible, and the source and authenticity of this document are unstated and unclear.  (*See* Dkt. No. 186 at 33).

However, Adams left Legal Aid and Ndemenoh has not spoken with her since 2017.  (P. Dep. 27:25–28:10).  Ndemenoh has not submitted any affidavit, testimony, or other witness statement from Adams on this motion.  Nor does Ndemenoh have any proof from DANY showing that the email account in question was linked to Baidya's IP address.  (P. Dep. 31:15–32:5).

## B. Procedural History

Plaintiff, proceeding *pro se*, commenced this action on June 11, 2020 against CUNY, City College of New York President Vincent Boudreau, and the Attorney General of New York.  (Dkt. No. 1).  Although Plaintiff did not identify any particular causes of action, the Honorable Louis L. Stanton—to whom the case was originally assigned—construed the original Complaint as asserting claims for false arrest, malicious prosecution, and the denial of due process under 42 U.S.C. § 1983, as well as claims under Title VI of the Civil Rights Act of 1964, and dismissed the action *sua sponte* with leave to amend.  (Dkt. No. 3).[5]

On September 21, 2020, Plaintiff filed his First Amended Complaint ("FAC"), removing CUNY and the Attorney General as Defendants, naming Boudreau again, and adding Baidya, Laperuta, Rhinehart as Defendants along with Dean of Student Affairs Wendy Thornton and CUNY Chair William Thompson.  (Dkt. No. 4 at 1–2).  The action was reassigned to the Honorable Ronnie Abrams as the district judge.  (*See* Dkt. Entry on Oct. 9, 2020).

---

[5] Among other things, Judge Stanton found that the Attorney General was immune from civil suits for damages and that Plaintiff's claims against CUNY were barred by the Eleventh Amendment.  (*Id*. at 8–9).

Defendants filed a motion to dismiss the FAC on April 16, 2021. (Dkt. No. 27–28). Following the motion, Plaintiff retained counsel, Samuel DePaola of Sim & DePaola LLP (*see* Dkt. No. 30), and requested multiple extensions, each of which was granted. (Dkt. Nos. 31, 33, 35, 38, 41). Rather than file opposition, Plaintiff filed a Second Amended Complaint ("SAC") on September 24, 2021, this time naming 22 defendants (including numerous CUNY employees and NYPD officers) as well as asserting additional causes of action. (Dkt. No. 51 ("SAC")). However, despite multiple extensions (Dkt. Nos. 59, 65, 98), Plaintiff failed to properly serve any of the additional defendants with the SAC, and Judge Abrams dismissed the added defendants on July 21, 2022. (Dkt. No. 101). The remaining Defendants filed their motion to dismiss the SAC on November 18, 2022. (Dkt. Nos. 110–11).

On September 19, 2023, Judge Abrams granted the motion to dismiss as to Boudreau, Thornton, and Thompson, finding that the SAC did not sufficiently allege their personal involvement in the events at issue. (Dkt. No. 121 ("O&O") at 12–13). Judge Abrams also dismissed Plaintiff's claims for excessive force, discrimination, First Amendment retaliation, failure to intervene, and conspiracy, as Plaintiff did not meaningfully respond to Defendants' arguments for dismissal of those claims. (*Id.* at 10–11). That left Plaintiffs' claims against Baidya, Laperuta, and Rhinehart under Section 1983 and New York State law for false arrest and malicious prosecution.[6] (*See* SAC ¶¶ 145–56 (fifth and sixth causes of action), 167–81 (ninth and tenth causes of action)).

---

[6] In dismissing Plaintiff's initial Complaint, Judge Stanton had found that Plaintiff's Section 1983 claims were time-barred under the applicable three-year limitations period. (Dkt. No. 3 at 5–6).

Judge Abrams found that the SAC stated claims for false arrest and malicious prosecution against Baidya as to both Plaintiff's first arrest in November 2016 and his second arrest in March 2017. (O&O at 19–22). Her ruling relied on the SAC's allegations that Baidya "created and sent fraudulent emails purporting to be from Plaintiff threatening to kill and injure Baidya, Professor Melara, and their families, and thereafter filed two false reports based upon the messages, resulting in each of his two arrests and subsequent criminal proceedings." (*Id.* at 20).

Judge Abrams found that the SAC did not state a claim for false arrest or malicious prosecution against Laperuta based on Plaintiff's first arrest, because, accepting its allegations as true, the SAC established that Laperuta had probable cause for Plaintiff's arrest. (*Id.* at 14–15). Likewise, the SAC did not state a claim for false arrest or malicious prosecution against Rhinehart based on the first arrest because it merely alleged that Rhinehart forwarded Baidya's initial complaint to campus safety. (*Id.* at 15–16). While a "closer question" (*id.* at 16), Judge Abrams concluded that the SAC's allegations were sufficient to state claims for false arrest and malicious prosecution against both Laperuta and Rhinehart as to Plaintiff's second arrest in 2017. (*Id.* at 16–19). This was because the SAC alleged that "both Laperuta and Rhinehart forwarded Baidya's second complaint to the New York and Queens Counties District Attorney's Offices after receiving it," and a "plausible inference" could be drawn that, at that time, both Laperuta and Rhinehart had

---

However, Judge Abrams found that these claims were timely when taking into account the 229-day tolling period pursuant to executive orders issued by then-Governor Cuomo during the COVID-19 pandemic. (O&O at 8–9).

reason to doubt the authenticity of Baidya's claim that Ndemenoh had threatened her again.  (*Id.* at 16–17).

On October 17, 2023, the action was reassigned to the Honorable Dale E. Ho as district judge, and the undersigned as the designated magistrate judge.  (*See* Dkt. No. 124; Dkt. Entry on Oct. 18, 2023).  The parties consented to the undersigned's jurisdiction on January 12, 2024.  (Dkt. No. 143).  After several extensions, delays, and substitutions of counsel (Dkt. Nos. 122–23, 125–39, 147–48, 154–56, 158–59), an initial case management conference was held on March 28, 2024, and the Case Management Plan and Scheduling Order was so-ordered the same day.  (*See* Dkt. Entry on Mar. 28, 2024; Dkt. No. 164).

The case proceeded to discovery, but there was very little of it.  Ndemenoh did not seek to depose any of the Defendants and propounded no discovery requests.  (*See* Dkt. No. 181 at 5; P. Resp. Baidya 56.1 ¶¶ 10–13).  Although Plaintiff's counsel submitted requests to DANY under New York's Freedom of Information Law ("FOIL"), no records were obtained, and Plaintiff did not issue a subpoena to DANY for documents or notice a deposition of any DANY representative.  (P. Dep. 31:9–22, 39:10–40:25; P. Resp. Baidya 56.1 ¶¶ 10–11).  Defendants also appear not to have engaged in any discovery efforts aimed at ascertaining who sent the offending emails.  Defendants did, however, depose Plaintiff in October 2024 (Dkt. No. 185 Ex. J), and served discovery requests to which Plaintiff, eventually, responded (Dkt. No. 181 at 5; Dkt. No. 185 Exs. K–L).[7]

---

[7] Plaintiff's responses to Defendants' discovery requests came after Defendants, in August 2024, informed the Court that they had not received responses from Plaintiff's counsel and were unable to

On February 13, 2025, Defendants Laperuta and Rhinehart moved for summary judgment (Dkt. No. 185), accompanied by a declaration from defense counsel with attached exhibits (Dkt. No. 185 Exs. A–M), Laperuta and Rhinehart's 56.1 Statement (Dkt. No. 185-16 (L&R 56.1)), Laperuta's Affidavit (Dkt. No. 185-1 (Laperuta Aff.)), Rhinehart's Affidavit (Dkt. No. 185-2 (Rhinehart Aff.)), and a Memorandum of Law in Support of Laperuta and Rhinehart's Motion (Dkt. No. 185-17 ("L&R Br.")).  On February 14, 2025, Defendant Baidya also filed her motion for summary judgment (Dkt. No. 186), accompanied by exhibits (Dkt. No. 186 at 32–113), Baidya's 56.1 Statement (Dkt. No. 186 at 3–6 (Baidya 56.1)), a Memorandum of Law in Support of Baidya's Motion (Dkt. No. 186 at 7–21 ("Baidya Br.")), and a declaration from Baidya (Dkt. No. 187 (Baidya Decl.)).

Soon after, Plaintiff's counsel moved to withdraw as his firm, Sim & DePaola LLP, was "dissolved on, or about October 6, 2024" and his "rights and interests in the firm, including this matter, [were] transferred to [his] former partner."  (Dkt. No. 188).  Counsel's letter stated that Plaintiff would continue to be represented by Sameer Nath of Sim & Associates, PLLC.  (*Id.*).  The Court granted this motion on February 21, 2025.  (Dkt. No. 189).

On March 14, 2025, Plaintiff, now represented by Mr. Nath, filed his opposition brief to Laperuta and Rhinehart's motion (Dkt. No. 190 ("P. 1st Opp.")),

---

reach him, and sought a conference in advance of a motion to compel.  (Dkt. Nos. 173–74).  Plaintiff's counsel at the time informed the Court that he was having health issues and sought an extension. (Dkt. No. 176)  The Court granted the extension but warned Plaintiff's then-counsel "that further lapses in communication and failures to meet his discovery obligations could result in the imposition of sanctions . . . ."  (Dkt. No. 177).

accompanied by a declaration from Plaintiff's counsel and attached exhibits that included an affidavit from Plaintiff (Dkt. No. 191-1  (P. Aff.)), Plaintiff's response to Laperuta and Rhinehart's 56.1 Statement (Dkt. No. 191-2 ("P. Resp. L&R 56.1")), and Plaintiff's own submission of material facts (Dkt. No. 191-3 ("P. 56.1")).  On that same date, Plaintiff filed his opposition to Baidya's motion (Dkt. No. 192 ("P. 2d Opp.")), accompanied by a second declaration from Plaintiff's counsel (Dkt. No. 193) and attached exhibits that included the same affidavit as at Dkt. No. 191-1 (Dkt. No. 193-1), the criminal court complaints from both Queens and New York County (Dkt. No. 193-2), the same statement of material facts as at Dkt. No. 191-3 (Dkt. No. 193-3), and Plaintiff's response to Baidya's 56.1 Statement (Dkt. No. 193-4 (P. Resp. Baidya 56.1)).

Baidya replied on March 25, 2025 (Dkt. No. 194 ("Baidya Rep.")), and Laperuta and Rhinehart replied on March 27, 2025 (Dkt. No. 195 ("L&P Rep.")).

## LEGAL STANDARDS

### A. Motion for Summary Judgment

"Granting summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pantoja v. Enciso*, No. 18 Civ. 11842 (PAE) (GWG), 2019 WL 6704684, at *4 (S.D.N.Y. Dec. 10, 2019) (quoting Fed. R. Civ. P. 56(a)), *R&R adopted*, 2020 WL 70919 (S.D.N.Y. Jan. 6, 2020).  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).  "'[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"  *Id.* (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).

"[A]t summary judgment, a court's responsibility 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 249 n.11 (S.D.N.Y. 2014) (quoting *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011)).  "'Assessments of credibility and choices between conflicting versions of the events are matters for the [factfinder], not for the court on summary judgment.'"  *Id.* (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 553–54 (2d Cir. 2005)).  "However, '[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].'"  *Jeffreys*, 426 F.3d at 554 (quoting *Anderson*, 477 U.S. at 252).

The party moving for summary judgment "bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial,' and to present such evidence that would allow a jury to find in his favor."  *Minus v. City of New York*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 256).  "'[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.'"  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d

Cir. 2013) (quoting *Cordiano v. Metacon Gun Club, Inc.,* 575 F.3d 199, 204 (2d Cir. 2009)). In that instance, "'the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.'" *Id.* (quoting *Cordiano,* 575 F.3d at 204).

"[A]t the summary judgment stage, the court accepts the facts as stated in Plaintiff's deposition transcript or affidavit, to the extent they are not contradicted by the record." *Ali v. Connick*, 136 F. Supp. 3d 270, 279 (E.D.N.Y. 2015). "[T]he Court must 'resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought.'" *Guillen v. City of New York*, 625 F. Supp. 3d 139, 149 (S.D.N.Y. 2022) (quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008)). "'[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party,' summary judgment must be denied." *Minus*, 488 F. Supp. 3d at 63 (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)). "At the same time, however, 'in considering what may reasonably be inferred from witness testimony, the court should not accord the nonmoving party the benefit of unreasonable inferences, or inferences at war with undisputed facts.'" *Ramlogan v. White*, No. 20 Civ. 5879 (JPC), 2024 WL 1313417, at *4 (S.D.N.Y. Mar. 27, 2024) (quoting *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *7 (S.D.N.Y. Mar. 11, 2022)).

## B. False Arrest

"'A [Section] 1983 claim for false arrest is substantially the same as a claim

for false arrest under New York law[.]'" *Carruthers v. Colton*, No. 22-3234-CV, 2025 WL 2405451, at *6 (2d Cir. Aug. 20, 2025) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)).  "'Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)).

"An arrest is privileged if it is based on probable cause," *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022), and "'[u]nder both federal and New York state law, probable cause is a complete defense to a false arrest claim,'" *Carruthers*, 2025 WL 2405451, at *6 (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)).  "If there is probable cause to arrest a plaintiff 'for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest'—then a plaintiff cannot prevail.'" *Alexander*, 132 F.4th at 156 (quoting *Kee v. City of New York*, 12 F.4th 150, 158–59 (2d Cir. 2021)) (emphasis in original).

"'An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Carruthers*, 2025 WL 2405451, at *6 (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).  "'To assess probable

16

cause, a court considers only the facts available to the officer at the time of the arrest and immediately before it.'" *Id.* (quoting *Ashley*, 992 F.3d at 136). "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (cleaned up).

In addition, "under New York law, '[m]erely providing information [to the police], even when subsequently found to be in error, resulting in the arrest of an innocent man, does not subject the informant to liability for false imprisonment." *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 312 (S.D.N.Y. 2005) (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 256–57 (2d Cir. 1997)). But, "[w]here an individual instigates an arrest and does so based on knowingly false information, that individual may be held liable for false arrest." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 517 (E.D.N.Y. 2021).

## C. Malicious Prosecution

"Malicious prosecution claims sound in the Fourth Amendment, which proscribes the 'wrongful initiation of charges without probable cause.'" *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (quoting *Thompson v. Clark*, 596 U.S. 36, 43 (2022)). "To prevail on a § 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.'" *Kurtz v. Hansell*, 664 F. Supp. 3d 438, 452 (S.D.N.Y. 2023) (quoting *Manganiello v.*

*City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010)), *aff'd sub nom. Kakar Kurtz*

*v. Lawson*, No. 23-7548-CV, 2025 WL 39860 (2d Cir. Jan. 7, 2025).

"Under New York and federal law, a plaintiff must allege: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Giles v. City of Mount Vernon*, No. 20 Civ. 05119 (PMH), 2024 WL 126883, at *6 (S.D.N.Y. Jan. 11, 2024) (quoting *Franco v. Gunsalus*, No. 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023)). "A claim for malicious prosecution under § 1983 requires the additional element of 'a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Tarrant v. City of Mount Vernon*, No. 20 Civ. 09004 (PMH), 2022 WL 17070062, at *4 (S.D.N.Y. Nov. 17, 2022) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

To establish a favorable termination of a criminal proceeding, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson*, 596 U.S. at 49. "A plaintiff need only show that the criminal prosecution ended without a conviction." *Id.*

As for the first element, "'there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding,'" but "'a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice

and encouragement or importuning the authorities to act.'" *Douglas v. City of Peekskill*, No. 21 Civ. 10644 (KMK), 2025 WL 965018, at *6 (S.D.N.Y. Mar. 31, 2025) (quoting *Marom v. Town of Greenburgh*, No. 13 Civ. 4733, 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018)).  In addition, "'[a] defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury.'" *Days v. Cnty. of Westchester*, No. 18 Civ. 11538 (NSR), 2025 WL 1898948, at *5 (S.D.N.Y. July 9, 2025) (quoting *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 456 (S.D.N.Y. 2012)).

Finally, as with false arrest, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Tarrant*, 2022 WL 17070062, at *5 (quoting *Manganiello*, 612 F.3d at 161–62).  "'[O]nce probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, the groundless nature of the charges is made apparent by the discovery of some intervening fact.'" *Giles*, 2024 WL 126883, at *7 (quoting *Smith v. Tobon*, 529 F. App'x 36, 38 (2d Cir. 2013)).

## DISCUSSION

As Judge Abrams previously concluded that Plaintiff had abandoned all causes of action against Defendants except for false arrest and malicious prosecution brought under 42 U.S.C. § 1983 and New York State law, Defendants now move for summary judgment on those remaining claims.  (*See* O&O at 10–12).  The Court first considers Ndemenoh's claims against Baidya and then addresses his

claims against Laperuta and Rhinehart.

## A. Plaintiff's Claims Against Baidya

Baidya contends that she is entitled to summary judgment as to both causes of action, for false arrest and malicious prosecution, because Ndemenoh "has no admissible evidence with which to prove his claims against defendant Baidya," and thus no genuine dispute of material fact exists.[8]  (Baidya Br. at 1).  Ndemenoh opposes summary judgment on the grounds that there are "questions of fact as to whether there was probable cause for the arrest of Plaintiff," and asserts that Baidya is liable for malicious prosecution because "the emails at issue in this action were fabricated and traced back to Ms. Baidya's email address."  (P. 2d Opp. at 4).  At issue is whether there exists evidence in the record to raise a triable issue of fact as to whether Baidya knowingly provided false information to the DA's office that led to Ndemenoh's November 2016 and March 2017 arrests.

Ndemenoh's opposition states that "Plaintiff has maintained since the inception of this litigation [(*i.e.*, since his original *pro se* complaint)] that the emails at issue in this action were fabricated and traced back to Ms. Baidya's email address."  (*Id.*).  That is true.  But at this stage of the litigation, Ndenemoh may not stand on this bare allegation alone.  "A nonmoving party must come forward with *admissible* evidence to avoid summary judgment."  *Harriott v. Success Acad. Charter Sch.*, No. 22 Civ. 3037 (ER), 2024 WL 757478, at *9 (S.D.N.Y. Feb. 23,

---

[8] Confusingly, Baidya's brief assumes that Plaintiff is continuing to assert claims for unlawful discrimination.  (Baidya Br. at 2, 11–12).  However, as noted above, Judge Abrams determined in her ruling on the motions to dismiss that the only claims that remain against Baidya are the claims for false arrest and malicious prosecution.  (O&O at 19–22).

2024) (emphasis in original).  Baidya argues that Ndemenoh has no admissible
evidence to support his charge that she created the Gmail account and sent the
emails at issue.  (Baidya Br. at 14–15).  She contends that Ndemenoh relies solely
on his deposition testimony and affidavit where he asserts what he was told by his
Legal Aid attorney and that such statements constitute inadmissible hearsay.  (*Id.*
at 16–17).

    Baidya's argument is well-founded.  "[W]here a party relies on affidavits or
deposition testimony to establish facts, the statements 'must be made on personal
knowledge, set out facts that would be admissible in evidence, and show that the
affiant or declarant is competent to testify on the matters stated.'"  *DiStiso v. Cook*,
691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see Han v. Shang
Noodle House, Inc.*, No. 20 Civ. 2266 (PKC) (VMS), 2023 WL 5755213, at *6 n.8
(E.D.N.Y. Sept. 5, 2023) ("[A] court may strike portions of a supporting affidavit
that are not based upon the affiant's personal knowledge, [or] contain inadmissible
hearsay[.]" (cleaned up).  Thus, the Court "will not rely on any portion of Plaintiff's
[Affidavit] that is 'not based upon the affiant's personal knowledge,' 'contain[s]
inadmissible hearsay,' or 'make[s] generalized and conclusory statements.'"
*Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21 Civ. 7179 (DEH), 2024 WL
4054372, at *2 (S.D.N.Y. Sept. 5, 2024) (quoting *Geo-Grp. Commc'ns, Inc. v. Shah*,
No. 15 Civ. 1756, 2020 WL 5743516, at *11 n.8 (S.D.N.Y. Sept. 25, 2020)) (some
alterations in original).

    The Fed. R. Civ. P. 56(c)(4) "'requirement that the affiant have personal

knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.'" *Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423 (GHW), 2023 WL 4053131, at *2 (S.D.N.Y. June 16, 2023) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004)). "It is a well-established proposition of law that a party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial.'" *Lopez v. MNAF Pizzeria, Inc.*, No. 18 Civ. 6033 (ALC), 2021 WL 1164336, at *7 (S.D.N.Y. Mar. 25, 2021) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)); *see also Schwimmer v. Sony Corp. of Am.,* 637 F.2d 41, 45 n.9 (2d Cir.1980) ("A hearsay affidavit is a nullity on a motion for summary judgment."); *Concey v. N.Y. State Unified Ct. Sys.*, No. 08 Civ. 8858 (PGG), 2011 WL 4549386, at *1 n.2 (S.D.N.Y. Sept. 30, 2011) (a plaintiff "cannot . . . rely on inadmissible hearsay to defeat summary judgment").

During his deposition, Ndemenoh testified that the evidence he had to "prove [his] allegation that Ms. Baidya created a fraudulent e-mail account," as alleged in the SAC, is what Adams, his former Legal Aid attorney, told him she learned from DANY. (P. Dep. 26:4–27:13). Specifically, when asked "what exactly did [your former attorney] tell you about this e-mail account?," Ndemenoh testified that "[s]he called [him] and told [him] . . . that she went to see Cyrus Vance and . . . found out that[] it was Tanni Baidya that created the Gmail account and that this e-mail

account . . . was linked to her IP address. That they traced it to her IP address." (*Id.* at 28:11–29:2). Ndemenoh was then asked whether "the only proof [he] ha[s] . . . that . . . the November 27, 2016 e-mail . . . came from Defendant Baiya is what Lindsay Adams said to [him]," and Plaintiff responded "[y]es." (P. Dep. 34:18–25).[9] Echoing his deposition testimony, Ndemenoh states in his Affidavit that he was "later informed" that DANY dismissed the charges against him when it "learned that Ms. Baidya herself was the one who concocted the emails . . . ." (P. Aff. ¶ 24).

Plaintiff's statements as to what his Legal Aid attorney told him are plainly offered for the truth of the matter asserted, namely that Baidya created the Gmail account and sent the emails at issue. This is clearly hearsay. *See Platt as co-trustees of Platt Fam. Artwork Tr. v. Michaan*, 695 F. Supp. 3d 420, 439 (S.D.N.Y. 2023) ("Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*.'" (quoting Fed. R. Evid. 801(c)) (emphasis in original)). Indeed, it is hearsay within hearsay, as Adams did not purport to have personal knowledge of the facts and instead was merely repeating information that she received from DANY. *See Sanderson*, 2023 WL 4053131, at *2 ("[Plaintiff's colleague's] alleged statement, at the summary-judgment stage, constituted 'double-hearsay'—the first layer of hearsay being [his colleague]'s alleged statement to Plaintiff's [other] colleague . . . , and the second level being [the second colleague]'s relaying of that

---

[9] This testimony related to the email that was sent to Dr. Melara on November 27, 2016. When asked what proof he has that the email sent to Baidya on that date came from Baidya using the same fraudulent email account, Ndemenoh replied, "It is the same proof," *i.e.*, that "Adams told [him] that this second e-mail was also linked to Ms. Baidya." (P. Dep. 36:16–25, 37:7–25).

statement to Plaintiff.").  "Federal Rule of Evidence 805 requires that each element of the hearsay within hearsay be admissible."  *Harriott*, 2024 WL 757478, at *10.

Ndemenoh identifies no hearsay exceptions that would allow for admission of either Adams' statement or DANY's statement, nor does he offer the statements other than for the truth.  Nor does Ndemenoh make any showing that he would be able to present admissible evidence of the statements at trial.  Indeed, although the inadmissibility of Ndemenoh's hearsay statements was the key theme of Baidya's opening brief in support of her motion for summary judgment (*see* Baidya Br. at 1, 6–9, 16–18), Ndemenoh's opposition brief made no attempt to rebut this point and offered no theory as to how these statements could be admitted into evidence.  (*See* P. 2d Opp. at 3–4).

As Ndemenoh's belief that Baidya created the email account and sent the emails at issue is based on hearsay, Ndemenoh "has personal knowledge [] only of the fact that he heard about [DANY's] statement from" his former attorney. *Sanderson*, 2023 WL 4053131, at *2.  "Plaintiff, in other words, does not have personal knowledge of the fact that [DANY] made the statement, but merely of the fact that [his former attorney] relayed the statement."  *Id.*  "As a result, the Court could not treat Plaintiff's allegation that [DANY] made the statement in the first place as true for the purposes of the summary-judgment motion."  *Id.*; *see also, e.g.*, *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20 Civ. 3809 (JMF), 2023 WL 2185827, at *7 (S.D.N.Y. Feb. 23, 2023) (determining that plaintiffs' statement that police "told them," based on their investigation, that plaintiffs did

not steal a car, as they had been accused of by defendant, "is rank hearsay and therefore cannot defeat a motion for summary judgment") (citations omitted); *Russell v. N.Y. Univ.*, No. 15 Civ. 2185 (GHW), 2017 WL 3049534, at *6 n.4 (S.D.N.Y. July 17, 2017) (finding that plaintiff's declaration asserting that she "was told by the DA's office" that defendant was implicated in impersonating plaintiff when posting a blog comment "is hearsay, and is therefore not appropriately considered on a motion for summary judgment"), *aff'd*, 739 F. App'x 28 (2d Cir. 2018)).

Ndemenoh has made clear that he possesses no other evidence to substantiate his belief that Baidya sent the emails that led to his first (and presumably second) arrest.  When asked during the deposition whether Plaintiff or his counsel had subpoenaed Plaintiff's former attorney, Plaintiff's counsel responded, "[b]y counsel, we have not."  (P. Dep. 31:9–13).  When Plaintiff was asked whether he "obtain[ed] . . . any proof from the New York County District Attorney showing that this e-mail account was linked to Ms. Baidya's IP address," or whether his former attorney "show[ed] [him] any documents to prove [his] assertion," Plaintiff responded "[n]o."  (*Id.* at 27:7–13, 31:15–20).

Ndemenoh does assert that at their December 7, 2016 meeting, Rhinehart apologized and said that "they found out that [Ndemenoh] did not send those emails."  (*Id.* at 91:24–92:5; *see also* P. Aff. ¶ 20).  Rhinehart's alleged statement does not directly implicate Baidya in sending the emails, and to the extent it could be viewed as some evidence of Baidya's culpability, it does not help Ndemenoh's

claims against Baidya survive summary judgment.  Even assuming, *arguendo*, that Rhinehart's purported statement would be admissible as a party admission against Rhinehart, *see* Fed. R. Evid. 801(d)(2), it remains hearsay as to Baidya, and thus, would not be admissible against her.  *See, e.g.*, *Realuyo v. Diaz*, No. 98 Civ. 7684 (GBD), 2006 WL 695683, at *5 (S.D.N.Y. Mar. 17, 2006) ("The alleged statements by Mr. Diaz may not be deemed admissions against KEPCO simply because both are named defendants in this action.").[10]

The Court notes that, in her declaration submitted on this motion, Baidya does not deny creating a fake email account or sending the emails she claimed were sent by Ndemenoh.  Since she also was not deposed in this action, she has never, so far as the record divulges, denied Ndemenoh's accusation under oath.  As Baidya correctly notes, however (Baidy Br. at 15), although the party seeking summary judgment bears the initial burden of showing no genuine dispute of material fact exists, "'when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an essential element of the nonmovant's claim.'"  *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)); *see Brandon v. City of New York*, 705 F. Supp. 2d 261, 277

---

[10] While a party admission may be admissible against a co-conspirator if made during and in furtherance of the conspiracy, *see* Fed. R. Evid. 801(d)(2)(E), Ndemenoh's conspiracy claim was dismissed by Judge Abrams.  (O&O at 11).  Ndemenoh does not argue that Rhinehart's statement is admissible against Baidya on this ground, and the Court's review of the record discloses no basis for a finding, by a preponderance of the evidence, that a conspiracy existed between Rhinehart and Baidya.  *See French Am. Banking Corp. v. Flota Mercante Grancolombiana, S.A.*, 693 F. Supp. 1421, 1426 (S.D.N.Y. 1987).

(S.D.N.Y. 2010) ("There is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.'" (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (emphasis in *Celotex*)). The absence of a sworn denial from Baidya, therefore, is not fatal to her motion for summary judgment.

In short, Ndemenoh has provided no admissible evidence that would allow a trier of fact to find that Baidya sent the emails at issue and thus knowingly provided false information that led to Ndemenoh's arrests. Therefore, Ndemenoh's claims for false arrest and malicious prosecution against Baidya suffer from a failure of proof on an essential element of his claims. Accordingly, Baidya is entitled to summary judgment.

## B. Plaintiffs' Claims Against Laperuta & Rhinehart

Following Judge Abrams' ruling on the motions to dismiss, the only claims remaining as to Laperuta and Rhinehart are for false arrest and malicious prosecution relating to Plaintiff's *second* arrest, in March 2017, and the subsequent criminal proceeding. (O&O at 16). Judge Abrams dismissed Ndemenoh's claims against Laperuta and Rhinehart relating to his *first* arrest and prosecution that occurred in November 2016. (*Id.* at 15). Oddly, both sides' briefs nonetheless continue to litigate the viability of the claims relating to the first arrest, as if the parties had forgotten about Judge Abrams' ruling. (*See* L&R Br. at 4, 10–11, 14–15; P. 1st Opp. at 3–6). For the sake of clarity, the analysis below discusses both arrests.

### 1.  First Arrest

As noted above, Judge Abrams dismissed the claims against Laperuta and
Rhinehart relating to the November 2016 arrest because (1) accepting the SAC's
allegations as true, Laperuta had probable cause to effect Ndemenoh's arrest, and
(2) the SAC alleged merely that Rhinehart forwarded Baidya's initial complaint to
campus security.  (O&O at 15).  Ndemenoh does not present any evidence or
arguments on this motion to improve upon the SAC's insufficient allegations or
create a material issue of fact relating to the first arrest.

First, as to Laperuta, Ndemenoh does not point to any evidence gathered
during discovery or other facts in the record that would undermine Judge Abrams'
ruling that, as acknowledged in the SAC, "Laperuta arrested Plaintiff in November
2016 based upon facially inculpatory information received from Baidya, the putative
victim"—namely, the threatening emails sent to her and Dr. Melara facially
appearing to be from Ndemenoh—and that therefore "Laperuta had probable cause
to make the arrest."  (O&O at 14–15 (citing SAC ¶¶ 26, 40)).  Instead, Ndemenoh
argues that he "offered Defendant Laperuta his laptop and cell phone[,] which
Plaintiff maintains contained proof he had not sent the emails at issue," and that
"[r]ather than inspect the contents in his possession, Defendant Laperuta instead
summarily arrested Plaintiff."  (P. 1st Opp. at 4).  In so doing, Ndemenoh contends,
Laperuta disregarded "'plainly exculpatory evidence'" and thus lacked probable
cause.  (*Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)).

This argument fails because, insofar as Ndemenoh argues that probable

cause is lacking because Laperuta failed to further investigate Ndemenoh's "'protestations of innocence,'" *Best v. Merchant*, No. 21 Civ. 779 (GHW), 2022 WL 17551935, at *4 (S.D.N.Y. Dec. 9, 2022) (quoting *Panetta*, 460 F.3d at 395–96), the Second Circuit has made clear that "[a]lthough 'an officer may not disregard plainly exculpatory evidence' in determining probable cause, officers are 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest,'" *Alberty v. Hunter*, 144 F.4th 408, 416 (2d Cir. 2025) (first quoting *Panetta*, 460 F.3d at 395; and then quoting *Ricciutti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).

In *Fabrikant*, cited by Plaintiff for the proposition that "[r]eview for probable cause should encompass 'plainly exculpatory evidence'" (P. 1st Opp. at 4 (quoting 691 F.3d at 214), the Second Circuit noted that because "'probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful[,]'" it is "'of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation.'" *Fabrikant*, 691 F.3d at 214–15 (quoting *Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir. 1989)); *see also Best*, 2022 WL 17551935, at *4 ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." (quoting *Panetta*, 460 F.3d at 395–96)); *Ortiz v. Cnty. of Nassau*, No. 20 Civ. 3469 (OEM) (SIL), 2025 WL 590706, at *8 (E.D.N.Y. Feb. 24, 2025) (rejecting plaintiff's argument that "probable cause is questionable" and determining that "'the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor

does it matter that an investigation might have cast doubt upon the basis for the arrest.'" (quoting *Panetta*, 460 F.3d at 396)).  "An arresting officer thus does not have a 'duty . . . to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'"  *Best*, 2022 WL 17551935, at *4 (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003)).

When asked during his deposition what exculpatory evidence he would have "offered to prove [his] innocence," Plaintiff responded that he would "show the emails . . . about the research study, the confirmation, the age, the cancellation," which Plaintiff clarified meant "the complete and unedited e-mail exchange between [him]self and Baidya . . . ."  (P. Dep. 98:13–99:17).  Plaintiff confirmed in his deposition that he believes "those email exchanges would have proven [his] innocence" because "the e-mail address that was in question was not [his] e-mail address[.]"  (P. Dep. 99:14–22).  However, this information does not appear to have been "easily" or "immediately" available to Laperuta prior to the arrest, *see Marchand v. Hartman*, 395 F. Supp. 3d 202, 218–19 (D. Conn. 2019), given that viewing this information would have required an inspection of Plaintiff's laptop and cell phone.  *See Alberty*, 144 F.4th at 417 (holding that officers' "awareness" that a potentially exculpatory video "existed pre-arrest" without knowing "what the video showed" was not "plainly exculpatory").[11]

---

[11] Further, even if an inspection of the laptop and cellphone had revealed the absence of a connection to the Gmail account in question, and the existence of emails between Ndemenoh and Baidya from a different email account for Ndemenoh, that would have hardly been conclusive.  Ndemenoh easily

Second, as to Rhinehart, Ndemenoh likewise does not point to any evidence that Rhinehart had any involvement in the first arrest other than passing on Baidya's complaint to CUNY's campus security or that he was aware of any exculpatory evidence suggesting that Ndemenoh should not have been arrested. The only references to Rhinehart in Ndemenoh's opposition brief concern the December 7, 2016 meeting at which Rhinehart supposedly apologized to Ndemenoh and acknowledged that he knew Ndemenoh had not sent the threatening emails. (P. 1st Opp. at 2–3, 6). But that meeting occurred more than a week after Ndemenoh's arrest on November 28, 2016.

Nonetheless, Ndemenoh argues that a triable issue of fact exists as to his claim for malicious prosecution against Rhinehart because the prosecution based on his first arrest "should have ended when Defendant Rhinehart became aware that Plaintiff had not sent the emails." (P. 1st Opp. at 6). According to Ndemenoh, once Rhinehart learned of that fact, he should have taken "affirmative steps to inform[] the DA's office or the NYPD of such[.]" (*Id.* at 2–3).

Ndemenoh cites no authority to suggest that Rhinehart had a duty to inform law enforcement of this exculpatory information or could be liable for malicious prosecution based on his failure to act. Nor is the Court aware of any such authority. To the contrary, it is well established that, "absent a specific legislative directive, a citizen ordinarily has no legal obligation to volunteer exculpatory information to law enforcement authorities." *People v. Dawson*, 50 N.Y.2d 311, 318,

---

could have used another device to send the offending emails or erased evidence of the Gmail account prior to the seizure of his laptop and cellphone.

428 N.Y.S.2d 914, 406 N.E.2d 771 (1980); *see Otero v. Eisenschmidt*, No. 01 Civ. 2562 (HB) (AJP), 2504382, at *24 (S.D.N.Y. Nov. 8, 2004) ("Under New York law, . . . a witness has no obligation to volunteer exculpatory information to police officers[.]").

Rhinehart was the Director of Community Standards at CUNY.  (Rhinehart Aff. ¶ 3).  He was not part of law enforcement.  By the time he supposedly learned that Ndemenoh was not the author of the threatening emails, the prosecution had been initiated and was under the control of DANY.  A civilian defendant "'cannot be liable for . . . malicious prosecution'" unless he "'affirmatively induced'" a prosecutor or police officer to act, *Picott v. Chatmon*, No. 12 Civ. 7202 (ER), 2017 WL 4155375, at *8 (S.D.N.Y. Sept. 15, 2017) (quoting *Wasilewicz v. Vill. of Monroe Police Dep't*, 3 A.D.3d 561, 562, 771 N.Y.S.2d 170, 171 (2d Dep't 2004)), such as by "giving advice and encouragement or importuning the authorities to act," *id*. (citation omitted). (*See also* O&O at 20 (quoting *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015)). By allegedly failing to provide DANY with information about Ndemenoh's innocence, Rhinehart cannot be said to have "affirmatively induced" prosecutors to continue with their prosecution, and therefore, cannot be held liable for malicious prosecution.

Accordingly, the Court finds no reason to depart from Judge Abrams' ruling at the motion to dismiss stage and no basis for a finding at the summary judgment stage that a jury could return a verdict for Ndemenoh on his claims against Laperuta or Rhinehart arising from Ndemenoh's first arrest and prosecution.

### 2. Second Arrest

As noted above, Judge Abrams allowed Ndemenoh's claims against Laperuta and Rhinehart to proceed with respect to the March 2017 arrest based on the SAC's allegation that Laperuta and Rhinehart "forwarded Baidya's second complaint" to law enforcement while knowing or having reason to doubt the authenticity of the second set of threats.  (O&O at 16 (citing SAC ¶ 85)).  The relevant paragraph in the SAC alleges that not just Laperuta and Rhinehart, but a total of 20 defendants named in the SAC "forward[ed]" false information to prosecutors with respect to both arrests.  (SAC ¶ 85).  The SAC provides no particulars as to how or when Laperuta or Rhinehart specifically forwarded information from Baidya to anyone in law enforcement leading to Ndemenoh's second arrest.

Laperuta and Rhinehart's affidavits generally deny initiating any legal proceedings against Ndemenoh.  (Laperuta Aff. ¶ 7; Rhinehart Aff. ¶ 9).[12] Ndemenoh submits no evidence to the contrary and no evidence indicating that either Laperuta or Rhinehart played any role whatsoever in his second arrest and prosecution.  The criminal complaint for the March 2017 arrest shows that the arrest was made by an NYPD police officer (2017 Crim. Compl. at 1), unlike the first criminal complaint which was sworn out by a CUNY public safety officer after Ndemenoh was arrested by campus security.  (2016 Crim. Compl. at 4).  Baidya is

---

[12] At the same time, neither affiant specifically denies involvement in forwarding to law enforcement a complaint by Baidya regarding the March 2017 email—a central question of fact as noted in Judge Abrams' ruling.  (O&O at 16–18.)  As noted above, however, no such sworn denial was necessary for Laperuta and Rhinehart to prevail on this motion, as it was sufficient for them to point to the absence of evidence showing that they forwarded any information.  *See Brandon*, 705 F. Supp. 2d at 277.

the only complainant and source of information mentioned in the second complaint; the complaint does not refer to any information received or relayed from Laperuta, Rhinehart, or anyone else at CUNY.  (*See* 2017 Crim. Compl. at 1–3).

In his affidavit, Ndemenoh claims that the second arrest was the result of a "complaint" made by "Defendants" to the police after Ndemenoh emailed Rhinehart and Laperuta demanding that they "overturn" his suspension because his "continued suspension was discriminatory" as "Rhinehart admitted he knew [Plaintiff] hadn't sent the emails to Ms. Baidya . . . ."  (P. Aff. ¶¶ 22–23).  Ndemenoh asserts that the complaint to the police was "retaliation for [Plaintiff] telling [Defendants] their continued actions against [him] were discriminatory."  (*Id.* ¶ 23).

But Ndemenoh points to no evidence to support this retaliation theory—not a single email or other document and not a single admission or other statement by any of the Defendants (none of whom he deposed).  There simply is no evidence in the record to support Plaintiff's speculation that Laperuta and Rhinehart "made a police complaint" that led to Plaintiff's "rearrest[] on March 26, 2017, for violating an Order of Protection."  (P. Aff. ¶ 23).  As such, despite Plaintiff's conclusory assertion that Laperuta and Rhinehart were involved in passing Baidya's complaint to the DA and that doing so led to the second arrest, the record is devoid of any evidence that indicates that anyone other than Baidya provided information to the DA leading to the March 2017 arrest.

In short, there is nothing in the record to support Ndemenoh's argument that Laperuta or Rhinehart knowingly passed on false information that led to the second

arrest or had any role at all in the second arrest.  Absent evidence to that effect, there is no triable issue as to the first required element of a claim for false arrest: that "the defendant intended to confine the plaintiff."  *Alexander*, 132 F.4th at 156. Nor is there a triable issue as to the first required element of a claim for malicious prosecution: "the commencement or continuation of a criminal proceeding by the defendant against the plaintiff."  *Giles*, 2024 WL 126883, at *6.  Accordingly, Laperuta and Rhinehart are entitled to summary judgment on Ndemenoh's claims against them.

## C. Baidya's Motion for Sanctions

Baidya also seeks sanctions against Ndemenoh's former and current counsel pursuant to 28 U.S.C. § 1927 and the Court's inherent authority on the grounds that once it was "learned there is no evidence to support Ndemenoh's claims," his counsel was "required to dismiss the case."  (Baidya Br. at 18–19; *see* Baidya Rep. at 6).  Baidya asserts that sanctions are warranted because it is "unconscionable" that Plaintiff's counsel has "maintain[ed] this action" after producing "no evidence to support [Plaintiff's] claims."  (Baidya Br. at 19).   Thus, Baidya argues that Plaintiff's counsel's "continuing prosecution of this action is sanctionable" as it is done for an improper purpose, namely "to compel a nuisance value settlement."  (*Id.* at 18; Baidya Rep. at 5).

### 1. Legal Principles

"A federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive

reasons.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)). "Similarly, § 1927 provides that an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Diedhiou v. Republic of Senegal*, No. 20 Civ. 5685 (DEH) (KHP), 2024 WL 3540406, at *3 (S.D.N.Y. July 10, 2024) (quoting 28 U.S.C. § 1927), *R&R adopted,* 2024 WL 3540402 (S.D.N.Y. July 25, 2024). "The only difference between a sanctions award under § 1927 and a court's inherent power is that 'awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). "'As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry.'" *Id.* (quoting *In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013)).

"To impose sanctions under either Section 1927 or a court's inherent power, a district court must find 1) the challenged claim was without a colorable basis and 2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20 Civ. 9612 (LJL), 2024 WL 3824394, at *12 (S.D.N.Y. Aug. 14, 2024); *see also Diedhiou*, 2024 WL 3540406, at *3 ("To award sanctions under either § 1927 or the court's inherent

power, the court must find 'clear evidence' that the claims in question are 'entirely meritless' and that the party acted 'in bad faith.'" (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000))). "'The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.'" *Rhee-Karn v. Lask*, No. 15 Civ. 9946 (RWL), 2025 WL 2450731, at *16 (S.D.N.Y. Aug. 26, 2025) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)).

"With respect to the first prong, '[a] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Hong*, 2024 WL 3824394, at *12 (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999)). "The fact that judgment was entered against the party is 'a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis.'" *Metcalf v. TransPerfect Translations Int'l Inc.*, No. 19 Civ. 10104 (ER) (KHP), 2025 WL 1932763, at *7 (S.D.N.Y. Jan. 30, 2025) (quoting *Schlaifer Nance*, 194 F.3d at 337), *R&R adopted,* 2025 WL 1891210 (S.D.N.Y. July 9, 2025). "'The question is whether a reasonable attorney . . . could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*.'" *Prevezon Holdings*, 305 F. Supp. 3d at 479 (quoting *Schlaifer Nance*, 194 F.3d at 337) (emphasis in original).

As for the second prong, "under both Section 1927 and a district court's inherent power, the Court must make an explicit finding of bad faith before the imposition of sanctions." *Hong*, 2024 WL 3824394, at *12; *see Rossbach*, 81 F.4th at 143 ("[T]he imposition of sanctions under both its inherent power and § 1927 must

be supported by a finding of bad faith."). "Bad faith requires a court to determine that 'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Rhee-Karn*, 2025 WL 2450731, at *16 (quoting *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011)). "'Poor legal judgment' is not the same as bad faith." *Diedhiou*, 2024 WL 3540406, at *3 (quoting *Schlaifer Nance*, 194 F.3d at 340). "The bad faith standard is not easily met in this Circuit," *Rhee-Karn*, 2025 WL 2450731, at *16, and requires a showing of "clear and convincing evidence," *Hong*, 2024 WL 3824394, at *12.

"'Courts within the Second Circuit construe Section 1927 narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *Hong*, 2024 WL 3824394, at *13 (quoting *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21 Civ. 11096 (LJL), 2022 WL 4234552, at *5 (S.D.N.Y. Sept. 14, 2022)). "Even where the standards for imposing sanctions are met, a court retains discretion to decide whether to impose such sanctions and in what form and amount." *Id.*

## 2. Application

Measured against these standards, Baidya's motion for sanctions must be denied.

Baidya purports to ground her sanctions motion on Ndemenoh's attorneys' continuation of this action after they "learned they have no evidence to support the claims." (Baidya Br. at 19) Yet she also asserts that the "sanctions clock should be

started *before* fact discovery began" and suggests the accusations against her—
which she describes as conduct "only a sociopath would commit"—were
"unconscionable" from the get-go.  (Baidya Rep. at 7–8 (emphasis added)).  Baidya
argues that "Ndemenoh's failure to seek any discovery from Baidya, from her
codefendants, or from any witnesses, leads ineluctably to the conclusion that his
lawyers knew—before discovery began—that there was no reason to chase evidence
that doesn't exist."  (*Id*. at 7).  In other words, Baidya asks the Court to find that the
case against her is so devoid of merit "as to require the conclusion that [it] must
have been undertaken" in bad faith, *Metcalf*, 2025 WL 1932763, at *7 (quoting
*Johnson*, 642 F.3d at 125), in order to compel a monetary settlement.  (Baidya Rep.
at 5).

Baidya's argument is baseless.  Ndemenoh's counsel plainly had a good faith
basis for bringing this case.  Ndemenoh has insisted all along that he did not send
the threatening emails that Baidya accused him of sending.  He has repeatedly
sworn to that fact under oath.  (P. Aff. ¶¶ 10, 12, 15–16; P. Dep. 25:25–26:3, 47:18–
24, 49:2–15, 51:19–52:21).  He has also sworn that his former Legal Aid attorney
informed him that DANY determined that the emails were linked to Baidya.  (P.
Aff. ¶ 24; P. Dep. 26:4–27:5).  Although the attorney's hearsay statements do not
constitute admissible evidence sufficient to stave off summary judgment, Baidya
presents nothing to suggest that Ndemenoh is lying about what his attorney told
him, and it is a fact that both criminal proceedings against Ndemenoh were
dismissed.  Indeed, despite casting herself as the victim of this lawsuit, Baidya

submitted a declaration on this motion in which she never denied engaging in the conduct Ndemenoh accuses her of.

Nor is Ndemenoh's filing of opposition to Defendants' motions for summary judgment, and failure to conduct meaningful discovery, sufficient for the Court to find by clear and convincing evidence that Ndemenoh's counsel was motivated by bad faith. *See Robinson v. De Niro*, 614 F. Supp. 3d 73, 82 (S.D.N.Y. 2022) ("Critically, however, Defendants provide no evidence supporting this contention [of bad faith], and suggest the Court reach this conclusion based solely on the weakness of Plaintiff's arguments. This is hardly 'clear evidence' of bad faith, and absent such evidence, a finding of bad faith is not warranted." (quoting *Revson*, 221 F.3d at 79)), *R&R adopted,* 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022). In fact, nothing in the record lends support to Baidya's accusation that Plaintiff's counsel commenced or continued to pursue this action in order to extort a settlement. To the contrary, Baidya does not even contend that Plaintiff's counsel ever approached her counsel with an offer of settlement or a suggestion that the parties engage in settlement discussions.[13]

---

[13] Nor is the Court persuaded by Baidya's reference to another case in this District in which Judge Liman imposed sanctions on Ndemenoh's former counsel, Mr. DePaola, and others at his firm under Rule 16(f). (Baidya Br. at 20–21 (discussing *Perez v. Edwards*, No. 20 Civ. 1359 (LJL), 2023 WL 5935029 (S.D.N.Y. Sept. 12, 2023)). A finding of meritlessness and bad faith "must be supported 'by a high degree of specificity in the factual findings.'" *Hong*, 2024 WL 3824394, at *12 (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)). The actions of Mr. DePaola in another suit cannot substitute for the requisite showing of bad faith conduct in this case. Moreover, Mr. DePaola's derelictions in the *Perez* case involved persistent failures to adhere to Court deadlines, which is why he was sanctioned under Rule 16(f) and not under Section 1927 or the Court's inherent authority. *See Perez*, 2023 WL 5935029, at *1–2. While that conduct certainly was reprehensible, there was no finding that he or his firm brought or continued the litigation in bad faith.

"It is not in the interest of justice or fair play to sanction Plaintiff's counsel where, as here, there is a conceivable, even if not legally sound or persuasive, argument that the claims have merit." *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y. 2017), *aff'd,* 706 F. App'x 44 (2d Cir. 2017). "The fact that Plaintiff's counsel has pursued this claim through summary judgment, even though the Court is of the view that Plaintiff has adduced no facts [to support his argument], does not 'require' the conclusion that counsel's actions were 'undertaken for some improper purpose.'" *Id.* at 222 (quoting *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016)).

In short, while Plaintiff's failure to take any discovery may evince poor lawyering, it does not demonstrate bad faith. Thus, even if the Court were to determine that Plaintiff's arguments on summary judgment had no colorable basis due to counsel's failures to adduce evidence through discovery, there is no clear evidence that the continuation of this action was undertaken in bad faith as required to support an award of sanctions. *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 Civ.1254 (SHS), 2024 WL 4250359, at *3–4 (S.D.N.Y. Sept. 20, 2024) (declining to impose § 1927 sanctions despite plaintiff counsel's "fail[ure] to take its discovery obligations seriously" and "to grasp the scope of his client's discovery obligations,'" as well as counsel's "unreasonable" litigation conduct, because "'negligence and/or incompetence' is not the equivalent of acting in bad faith") (citation omitted); *Kesner v. Buhl*, No. 20 Civ. 3454 (PAE), 2022 WL 1302205, at *2 (S.D.N.Y. May 2, 2022) ("Apart from [plaintiff's] failure to take

discovery, [defendant] does not point to any evidence of bad faith by [plaintiff] or [counsel]. There was no effort to multiply or delay proceedings.").

As the Court cannot find that Plaintiff's counsel's conduct is the product of bad faith, Baidya's motion for sanctions is denied.

## CONCLUSION

The broad rules of discovery in federal court give litigants powerful tools for uncovering the truth. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003) ("A lawsuit is supposed to be a search for the truth, and the tools employed in that search are the rules of discovery.") (citation omitted); *Goff v. Kroger Co.*, 121 F.R.D. 61, 62 (S.D. Ohio 1988) ("[T]he broad rules of discovery are essential tools to facilitate the truth-finding process."). When those tools are unused, the truth may remain hidden, and allegations may not ripen into provable facts. Such is the case here. Defendants' motions for summary judgment are **GRANTED**. Baidya's motion for sanctions is **DENIED**. The Clerk is respectfully requested to terminate the motions pending at Dkt. Nos. 185–86, enter judgment for Defendants, and close this case.

**SO ORDERED**.

DATED:     New York, New York
           September 26, 2025

_____
GARY STEIN
United States Magistrate Judge